444 So.2d 1346 (1984)
STATE of Louisiana, Appellee,
v.
Calvin BROWN, Appellant.
No. 15856-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Rehearing Denied February 23, 1984.
Writ Denied April 23, 1984.
*1348 William H. Cook, Jr., Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Howard M. Fish, Catherine N. Estopinal, and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, MARVIN and NORRIS, JJ.
MARVIN, Judge.
Calvin Brown appeals his conviction by a jury of felony theft of air conditioners valued at more than $500 and his subsequent sentence, under a separate bill as a third felony offender, to 18½ years at hard labor. LRS 14:67; LRS 15:529.1. We affirm.
Along with two "supplemental" assignments, Brown briefs 17 of 22 alleged errors that were originally assigned by him. Assignments not briefed are deemed abandoned. State v. Reed, 324 So.2d 373 (La.1975).

FACTS
Brown was jointly billed with his female friend, Diane Madison. She pleaded guilty and was sentenced before Brown was tried. Ms. Madison testified, but not in accord with the statement of facts to which she agreed when she pleaded guilty. The colloquy on her plea of guilty was used to impeach her. Testimony about the theft was given by three security guards at Montgomery Ward who witnessed the theft and apprehended Ms. Madison and Brown. Brown did not testify.
About 1:30 p.m. on July 6, 1982, the security guards observed Brown and Madison entering the partially fenced and enclosed Garden Shop of Montgomery Ward department store at South Park Mall in Shreveport where the air conditioners were located. One security guard was hidden in a portable building in the Garden Shop. The others were partially concealed behind counters inside the building which housed other departments and which was separated from the Garden Shop by a glass wall.
*1349 Ms. Madison signaled Brown and told him that the Garden Shop area was "clear." Brown loaded two window air conditioners on a dolly or cart and, stopping and "duck-walking" in the shop, as one guard described it, pushed the loaded cart from the Garden Shop and into the parking lot adjoining the building. When he was about 30 feet from the shop, the security guards caught up with Brown and attempted to apprehend him after identifying themselves. Brown then let go of the cart and ran and was chased by two of the guards. The third guard remained to apprehend Ms. Madison who, by this time, was also in the parking lot.
The two guards who chased Brown eventually caught him about two blocks away after he ran through, and into the parking lot of, a McDonald's restaurant, where Brown attempted to throw away a box cutter knife that he was carrying. More than once during the chase and when the guards came close to him, Brown attempted to cut his pursuers with the knife, causing them to back away.
Pictures of the air conditioners with price tags were introduced into evidence and one of the guards testified as to the value of the air conditioners. This testimony was not contradicted. Brown does not assign any error to the legal sufficiency of the evidence of his guilt, but contends that other errors occurred during the course of the proceedings. We shall consider some of Brown's assignments together because of their obvious relationship with one another.

ASSIGNMENTS 2 and 3
The court refused to excuse two jurors, Garner and Bridges, for cause as requested by Brown. Garner at one time said she would "like to hear" defendant testify, but later said she would follow all of the court's instructions and acknowledged that she could not hold against Brown his refusal to testify. Bridges said that he knew other detectives and may have seen the witness, police detective Alderman. He said that, as a fireman, he had sometimes worked with law enforcement personnel before he retired. He said he could be "fair" and abide by his oath as a juror. The detective's testimony related only to the chain of evidence of the box-cutter knife Brown used during the chase. Brown did not attempt to cross-examine the detective. The trial court has much discretion in ruling on a challenge for cause and the entire voir dire must be considered in determining whether that discretion has been abused. State v. Bates, 397 So.2d 1331 (La.1981); State v. Reed, supra; State v. Douglas, 256 La. 186, 235 So.2d 563 (1970), cert. denied, 401 U.S. 914, 91 S.Ct. 888, 27 L.Ed.2d 814 (1971).
No abuse of discretion has been shown in this assignment.

ASSIGNMENT 4
Defendant complains that the state should not have been allowed to introduce the price tags which were attached to the air conditioners because the state failed to list these items in response to defendant's discovery motion. The state answered the discovery motion to the effect that it intended to introduce into evidence the Miranda rights cards signed by defendant, certain photographs, the box-cutter knife, and certain tools. Brown did not object to the admissibility of the price tags taken from the air conditioners when they were identified by the security guard-witness and offered into evidence. This issue was raised only on defendant's motion for a new trial. It is not properly before us. CCrP Art. 841.
The security guard testified as to the price or value of the air conditioners before he examined the price tags. The admission of the tags was harmless in any event.

ASSIGNMENT 5
This assignment relates to Detective Alderman's testimony when he was asked about what another police officer gave him on the day that Brown was arrested. Alderman said "she gave me a blue canvas bag that had bolt cutters and a large screwdriver, and she gave me a box cutter *1350 [knife]." Only the box cutter knife that defendant attempted to throw away before apprehension was then offered into evidence.
During the hearing on defendant's motion to suppress these items, the state agreed not to introduce the blue bag or its contents into evidence. The knife was not contained in the blue bag.
Notwithstanding Alderman's answer, the state did not attempt to offer the blue bag or its contents into evidence. Additionally, defendant did not raise this issue except in his motion for a new trial. We find the issue was improperly raised. CCrP 841. In any event, defendant has not shown any error that prejudiced him with respect to the admissibility of the knife which was independent of the contents of the blue bag.

ASSIGNMENT 6
Defendant complains that it was improper for the state to be allowed to impeach Diane Madison's testimony by making her admit, before the jury, her agreement to the details of the facts of the crime when she pleaded guilty. LRS 15:497. Defendant did not object to the impeachment. See State v. Elzie, 351 So.2d 1174 (La. 1977). Compare State v. Green, 390 So.2d 1253 (La.1980). This issue is not properly before us. CCrP 841.

ASSIGNMENT 9
Defendant complains that the judge's instructions confused the jury to the extent that the jury might have inferred that only general intent was an element of the crime of theft. Defendant did not object to the court's instructions and this issue is not properly before us. CCrP Art. 841. This contention, in any event, is without merit because the trial court instructed the jury on specific and general intent, and expressly said that "specific intent is an essential element of the crime of theft [which the state was required to prove beyond a reasonable doubt] ...."

ASSIGNMENTS 10, 11, 13, 14
These assignments relate to defendant's motion to recuse the assistant district attorney and the trial judge. These motions were made during the hearing on the multiple offender bill and were also raised in defendant's motion for a new trial. The assistant DA, while a member of the indigent defender office, made one or more perfunctory appearances with the defendant while defendant was being represented by another member of the ID office. This assistant DA did not represent the defendant in "this case" under CCrP 680.
Similarly, the trial judge was an assistant DA when defendant pleaded guilty to simple burglary on May 22, 1978. This guilty plea was to one of the felonies on which the multiple offender bill was based. In this case, this judge reduced defendant's bail and later refused to revoke bail when defendant failed to appear on this charge when he was ordered to do so. In all respects, the trial and the judge were "fair."
In each instance we find no showing of prejudice or personal interest sufficient to recuse either the prosecutor or the judge. We find no abuse of discretion on the part of the second judge who tried the motion to recuse. Compare State v. Maduell, 326 So.2d 820 (La.1976); State v. Austin, 258 La. 273, 246 So.2d 12 (1971).

ASSIGNMENT 12
In his motion for new trial, defendant alleged that one juror who was qualified on November 16, 1982, read a newspaper article to the effect that defendant failed to appear in court on this charge and that his bond was forfeited. This item appeared on the inside page of a Shreveport newspaper published the afternoon of November 16, 1982, and related to defendant's non-appearance before the commencement of this trial on November 16. The trial concluded on November 17. We find no abuse of discretion by the trial court in denying a motion for new trial on these grounds after all jurors were heard from at a hearing. The article was not shown to *1351 have been read by, or discussed among, the other jurors. The article does not directly refer to the trial in question and is not shown to have prejudiced defendant or the jurors in any way. CCrp 921. See and compare State v. Quimby, 419 So.2d 951 (La.1982), and State v. Scruggs, 165 La. 842, 116 So. 206 (1928).

ASSIGNMENT 15
Defendant did not object at the multiple offender hearing when the state introduced a copy of his criminal record. He raises here, for the first time, the issue of the record's admissibility because of the quality of its certification. Even should we find merit in defendant's argument, which we do not, the issue is not properly before us for review. CCrP 841, State v. Holstead, 354 So.2d 493 (La.1977).

ASSIGNMENTS 16, 17, 18, 21
These assignments relate to the admissibility and sufficiency of evidence offered to convict Brown as a third felony offender. On May 2, 1975, Brown pleaded guilty to simple burglary. On May 22, 1978, Brown pleaded guilty to another simple burglary which occurred on November 19, 1976. These two convictions, with the subject conviction of felony theft, form the basis for charging Brown as a third felony offender under LRS 15:529.1.
Brown argues that his pleas to the burglaries were not valid because he was not properly Boykinized. The transcript of the 1975 plea, reproduced here in part, shows that Brown answered affirmatively to these inquiries:
"... before the court is Calvin Brown with his attorney.
"Do you understand ... that you are waiving your right to trial by jury?
"... to have present and testify[ing] persons who are accusing you ...?
"... you are waiving your right against [self-incrimination]?"
The transcript of the plea of May 22, 1978, similarly reproduced, shows that Brown, with his counsel, answered these inquiries affirmatively:
"... you are giving up your right to a trial by jury...?
"... the right to require attendance of witnesses, the right to hear their testimony, including those accusing you, and the right of [your lawyer] on your behalf to ask them questions?
"... your right to remain silent, your right against self incrimination?"
To identify defendant as the same Calvin Brown who pleaded guilty on May 22, 1978, to simple burglary on November 19, 1976, the state introduced a jailer's report of that arrest dated November 19, 1976, which contained a fingerprint of Calvin Brown. That print was matched with the current print of this defendant. The deputy who matched the prints testified that this jailer's report was a record of the Caddo Sheriff's Office which he maintained and cared for and which he used to identify this fingerprint with the known print of the defendant, Calvin Brown. The Calvin Brown who pleaded guilty on May 22, 1978, to the November 19, 1976, burglary was clearly shown to be the same Calvin Brown, the defendant-appellant in these proceedings. This is also established by the prison record of Calvin Brown, replete with pictures, fingerprints, the social security number, and date of birth of this defendant.
Defendant complains that the jailer's report containing the fingerprint should not have been admitted into evidence because it was "not certified" as a "true copy" by the deputy. The deputy testified that the jailer's record was maintained by him and that this record was a part of the sheriff's records under his custody. We find no error. If it be error, it is harmless because the prison record shows that this defendant is one and the same person who served time for the November 19, 1976, burglary to which he pleaded guilty on May 22, 1978. Probation officers also identified this defendant as the Calvin Brown who was on probation as the result of the 1975 guilty plea.
Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and State ex rel. Jackson v. Henderson, 260 La. 90, *1352 255 So.2d 85 (La.1971), require that a defendant voluntarily and intelligently waive, when entering a guilty plea, his right to trial by jury, his right to confront and cross-examine witnesses against him, and his right against self-incrimination, before that guilty plea can be valid and used at a later time as a basis for an enhanced penalty. Calvin Brown's Boykin transcripts affirmatively show that he knowingly and voluntarily waived the three Boykin rights when he pleaded guilty on May 2, 1975, and on May 22, 1978. State v. Yarbrough, 418 So.2d 503 (La.1982). State v. Virgil, 390 So.2d 520 (La.1980).
Brown's last argument relating to his being found a third felony offender contends that without his fingerprint on the jailer's record, and without his prison record, the evidence is "insufficient" to prove the conviction (guilty plea) of May 22, 1978. We have found that these items were either clearly admissible or were not objected to. We find these contentions of defendant without merit.

ASSIGNMENT 22
In this assignment, Brown contends that his sentence to 18½ years at hard labor is excessive. The sentencing range afforded the trial judge was from 5 to 20 years. LRS 15:529.1, 14:67. This record shows that the trial court considered each factor in CCrP Art. 894.1. Among other things, the court mentioned defendant's age (25), his quitting school at age 16, his leaving home at age 17 when his mother died, his juvenile record, eight prior convictions, including two misdemeanor thefts, three burglaries, simple battery, felony theft [which we recently affirmed, State v. Brown, (La.App. 2d Cir.1983)], and an aggravated assault, and six other arrests for which no convictions were recorded since 1974. The court also noted defendant's attempts to cut his pursuers with the box cutter knife when they closed in on him during the chase before he was finally apprehended. Brown did not attempt to contradict the PSI report, which, incidentally, recommended the maximum sentence of 20 years. The trial court did not impose a constitutionally excessive sentence and did not fail to articulate its compliance with the sentencing guidelines.

CONCLUSION
We do not consider defendant's two "supplemental" assignments because they were not raised in the trial court. CCrP 920.
We find no error in the assignments briefed by defendant which are properly before us. The evidence of guilt is convincing. Conviction and sentence are AFFIRMED.