588 So.2d 805 (1991)
STATE of Louisiana, Appellee,
v.
Robert Paul JONES, Appellant.
No. 22805-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*806 James E. Beal, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., John C. Blake, Dist. Atty. by Chris L. Bowman, Asst. Dist. Atty., Jonesboro, for appellee.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
Defendant, Robert Paul Jones, was charged by bill of information with driving while intoxicated-third offense, a violation of LSA-R.S. 14:98. A jury found defendant guilty as charged and he was subsequently sentenced to serve four years at hard labor, one year of which is to be served without benefit of probation, parole, or suspension of sentence. Defendant was also sentenced to pay a fine of $1,000 or six *807 months in the parish jail in default of payment.
Defendant appeals his conviction and sentence and assigns as error the following: (1) the trial court erred in overruling defendant's objection to the introduction of a transcript of defendant's prior guilty plea for the charge of driving while intoxicated1st offense; (2) the trial court erred in failing to grant a mistrial after a state's witness made reference to defendant's commission of another crime; (3) the trial court erred in determining that the state's use of its peremptory challenge was done for a racially neutral reason; and (4) the sentence imposed by the trial court was excessive and illegal. Finding no merit, we affirm the conviction and remand for resentencing on the sole question of indigency of defendant.

FACTS
On February 16, 1991, defendant was with his girlfriend at a local bar. Defendant testified that he did not have anything alcoholic to drink that day prior to his ordering one 12-ounce beer at the bar. Defendant further stated that he had one swallow of beer when two friends came in the bar and informed him that his daughter had taken ill and was in the hospital. Upset at receiving the news concerning his daughter, defendant hurriedly took another swallow of beer and left the bar to go the hospital.
On the way to the hospital, defendant experienced car trouble and had to pull off the road. As he pulled into a parking lot, his car began to smoke and the engine stopped running. Two police officers, Garlington and Hartfield, were patrolling the area that evening and saw defendant's car smoking in the parking lot. They saw people standing near it and decided to see if they could render assistance. As the officers drove closer to defendant's car, defendant was able to get his car started and hurriedly exited the parking lot.
Both officers testified that defendant exited from the parking lot onto Leon Street, and in the process, his left rear tire dropped off into a ditch at the intersection. The officers further testified that after defendant ran a stop sign, they activated their patrol car light and siren and followed defendant. They testified that defendant passed a truck in a no passing zone. They further described defendant's driving as reckless and noted that defendant was traveling approximately 75 to 80 miles per hour in a speed zone that was posted as 35 and 45 miles per hour.
The officers testified that they continued to pursue defendant and, as defendant proceeded to the hospital, he lost control of his car and went into a lot on the corner of Beech Road and Davis Streets. The officers testified that upon exiting his vehicle, defendant loudly insisted that he had to get to the hospital because his eight-year old daughter had been taken to the emergency room at the hospital.
Contrary to defendant's contention that his eight-year old daughter was in the parish hospital, Officer Garlington confirmed with the parish hospital personnel that the youngest person being treated at the time was a 22-year old.
Officer Hartfield testified that defendant appeared to be trying to turn left onto Davis Street when he ran off of the road. Defendant disputed that assertion and claimed that he swerved out of control because his brakes "caught" which caused him to lose control of his car. Officers Hartfield and Garlington, based on the aforementioned factors, asked defendant if he would take a field sobriety test. Defendant said that he would not, and at that time, defendant was arrested, handcuffed, and placed into the patrol car and taken to the Sheriff's Department for a breath-alcohol test.
Upon arriving at the Jackson Parish Courthouse, defendant was taken to the Intoxilizer Room where he then decided to take the field sobriety test. Defendant failed all three of the field sobriety tests after several attempts, however, he never consented to take a breath-alcohol test.
Both officers testified that it was their opinion, based on their years of experience and formal training that defendant was *808 intoxicated at the time of his arrest and also at the time that he failed the field sobriety test at the parish courthouse.
Officer Walsworth, the Assistant Police Chief, testified that after observing him at the courthouse, his assessment of defendant was that he was indeed intoxicated. Walsworth observed defendant for approximately 15 to 20 minutes and noted that defendant's eyes were bloodshot, his clothes unkempt, his speech was slurred, and there was a strong odor of alcohol on his person.
On May 8, 1990, defendant was charged with DWI-3rd offense. Following a trial by jury, defendant was convicted as charged on September 18, 1990. Defendant appeals his conviction and sentence.

DISCUSSION
Assignment of Error No. 1:
By his first assignment of error, defendant contends that the trial court erred in admitting Exhibits S-1 and S-2 into evidence as predicate offenses for the DWI-3rd charge. Exhibit S-1 was the Certified Copy of Court Minutes of his June 6, 1986 DWI-1 conviction and Exhibit S-2 was the Certified Copy of Court Minutes of his January 5, 1988 DWI-1st conviction.
Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific grounds of objection. LSA-C.E. Art. 103 A(1). The record reveals that defendant made no contemporaneous objection to the introduction of Exhibit S-1 and made an invalid objection to Exhibit S-2. At trial, defendant objected to Exhibit S-2 on the ground that he was not advised of his right to appeal the misdemeanor DWI-1st conviction. He concedes, in brief of this appeal, that there is no right of appeal in a misdemeanor case.
In State v. Keltner, 542 So.2d 42 (La. App. 2d Cir.1989), we observed that contemporaneous objections are required in order to preserve the alleged error on appeal. LSA-C.Cr.P. Art. 841, at the time of this trial, provided:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires to take, or of his objections to the action of the court, and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion.
The contemporaneous objection rule of LSA-C.Cr.P. Art. 841 is necessary in order to promote judicial efficiency and in order to prevent a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors that might easily have been corrected at trial. State v. Marcell, 320 So.2d 195 (La.1975).
The jurisprudence has recognized certain limited exceptions to the contemporaneous objection rule based upon prejudice to the due process rights of the defendant. State v. Alexander, 430 So.2d 621 (La.1983). In addition, the rule is not applied in those very rare occasions when the error is so fundamental that it substantially undermines the reliability of the fact finding process in a criminal trial. State v. Arvie, 505 So.2d 44 (La.1987).
In the instant case, defendant argues that Exhibits S-1 and S-2 should not have been introduced into evidence as predicate offenses for enhancement purposes because he was not adequately advised of the perils of entering an uncounseled guilty plea in 1986 or in 1988.
Prior jurisprudence has not recognized an alleged defect of this kind to be commensurate with the limited exceptions to the contemporaneous objection rule. See State v. Alexander, 430 So.2d 621 (La. 1983); State v. Smith, 418 So.2d 534 (La. 1982); State v. Hayes, 364 So.2d 923 (La. *809 1978); State v. Lee, 346 So.2d 682 (La. 1977).
In State v. Brown, 444 So.2d 1346 (La. App. 2d Cir.1984), writ denied, 449 So.2d 1343 (La.1984), the defendant raised for the first time on appeal an objection to the admissibility of his prior criminal record at his multiple offender hearing. This court held that, even if defendant's argument had merit, which it did not, the issue was not properly before the court of appeal for review. LSA-C.Cr.P. Art. 841; State v. Holstead, 354 So.2d 493 (La.1977).
Because defendant failed to object to the admissibility of the two prior predicate offenses of DWI-1, the issue is not properly before the court for review. LSA-C.Cr.P. Art. 841; State v. Brown, supra.
Defendant further argues that Exhibits S-1 and S-2, both contain patent errors on the face of the record because they did not contain facts sufficient to show he knowingly waived his constitutional right to counsel.
LSA-C.Cr.P. Art. 920 provides:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
For the purpose of error patent review, the "record" in a criminal case includes the caption, the time and place of the holding of the court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir. 1986). After our review of the record, we conclude that Exhibits S-1 and S-2, at issue, were admitted as evidence and are not a part of the record for purposes of error patent review. Thus, we find no error patent in this case.
Assignment of Error No. 2:
Defendant, in his second assignment of error, argues that the trial court erred in refusing to grant a mistrial after a state witness made reference to defendant's commission of another crime.
The incident which lead to defendant's motion for mistrial was that the prosecutor on direct examination asked the following questions of Chief McKinney:
Q. Had you known the defendant prior to that occasion?
A. I've known Robert most of my life.
Q. And have you had an occasion to see him before when he was intoxicated?
A. Yes, I have.
Q. And have you had an occasion to see him when he was sober?
A. Yes, I have.
Q. And been able to distinguished between the two?
A. Certainly.
Q. And is there any doubt in your mind, that on the evening of February 16, 1990, when you came into contact with him at Beech Springs and Davis Street that he was intoxicated?
A. There is no doubt in my mind.
Then Mr. Bowman tendered the witness for cross-examination by defense counsel, Mr. Stokes. Mr. Stokes asked the following question:
Q. Mr. Bowman asked you about seeing Mr. Jones drunk on occasions prior to this. Were those occasions only on two other instances when he was charged with a DWI?
A. I couldn't tell you for certain Mr. Stokes, exactly when the incidents were, or if he was charged with a DWI. There is a possibility on one of the occasions he was charged with simple intoxication.
Mr. Stokes then objected and asked the court to excuse the jurors.
The law pertaining to the granting of a motion for mistrial is set out in LSA-C.Cr.P. *810 Art. 770 which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In State v. Kennedy, 444 So.2d 301 (La. App. 1st Cir.1983), writ denied, 446 So.2d 1228 (La.1984), the court held that the trial judge did not abuse his discretion in refusing to grant a mistrial following a police officers remark during cross-examination regarding another crime alleged to have been committed by the defendant. The court noted that the police officer's comment, although not a court official for the purpose of a mandatory mistrial pursuant to LSA-C.Cr.P. Art. 770 shall be reviewed with considerable concern as to the fairness of the trial and that a mistrial could be required in some circumstances. The court further stated that the question propounded on cross-examination tended to encourage the answer to which the defense counsel then objected.
The Supreme Court, in State v. Tribbet, 415 So.2d 182 (La.1982), held that when the defense counsel elicited testimony which implied that the defendant had previously committed other crimes, the state could not be held responsible for such testimony and the defendant cannot claim reversible error on the basis of that testimony which he elicited.
We find the rationale of Kennedy and Tribbet to be persuasive in this case. Chief McKinney's apparently inadvertent reference to another crime was made while he attempted to respond to defense counsel's open ended question. In that the defense counsel elicited the response, we find no error in the trial court's failure to grant a mistrial under LSA-C.Cr.P. Art. 770. Moreover, defendant failed to show that the officer's answer was the result of any pattern of unresponsiveness or improper intent. State v. McGuffey, 486 So.2d 1101, (La.App. 2d Cir.1986).
Even if Chief McKinney's response is more properly considered under LSA-C.Cr.P. Art. 771, the result would be the same. LSA-C.Cr.P. Art. 771 states in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

. . . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such case, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Billiot, 521 So.2d 763 (La. App. 2d Cir.1988), this court held that the trial judge did not err in refusing to declare a mistrial where defendant claimed the remarks made by witnesses were prejudicial to his case but he failed to request the court to admonish the jury to disregard the remarks made by the witness.
It should be noted that, in the instant case, defendant failed to request the *811 court to admonish the jury to disregard the remarks by the witness for which defendant complains. As no request for an admonition was made, no showing was made that an admonition would not have been sufficient to assure defendant a fair trial. This assignment is without merit.
Assignment of Error No. 3:
Defendant argues in his third assignment of error that the prosecutor used peremptory challenges to exclude black jurors from the venire and did so for racial reasons in violation of the rule established in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and LSA-C.Cr.P. Art. 795.
Specifically, defendant argues that two black females, Chekita C. Dill and Brenda Combs, were excluded from the venire because of their race. We limit our review to the subject of Mrs. Dill's exclusion because defendant has not briefed any argument with respect to Mrs. Combs' exclusion from the jury. An assignment of error which is neither briefed nor argued is considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA-Rule 2-12.4.
Both the state and the defendant stipulated that two of the six jurors that were finally seated were black individuals. Of the twelve prospective jurors in this case, six were black (the same race as the defendant). Two of the black prospective jurors were peremptorily excused by the state and the defendant exercised one peremptory challenge of a black prospective juror. Another black prospective juror was excused for cause.
Under Batson, the defendant must make a timely objection and demonstrate a prima facie case of purposeful discrimination. The defendant must establish that he is a member of a cognizable racial group, the prosecutor has exercised his peremptory challenge to remove other members of that race from the jury, and these facts, along with other relevant circumstances, raise an inference that the prosecutor used peremptory challenges to exclude the veniremen from the jury because of their race. Id. 476 U.S. at 96, 106 S.Ct. at 1722.
It is then incumbent upon the trial judge to determine whether or not the defendant has met his requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements made by the prosecutor during voir dire examination or in exercising peremptory challenges which may support or refute a showing of purposeful discrimination. Id. at 96-97, 106 S.Ct. at 1722-1723.
Once the defendant makes his prima facie showing of purposeful discrimination, Batson shifts the burden to the prosecutor to come forward with a neutral explanation for challenging any black jurors. The explanation need not equate to the justification of a challenge for cause, but it must be more that the prosecutor's assumption or intuition that the juror would be partial to the defendant because of their shared race. The prosecutor may also not merely assert good faith or deny any discriminatory motive. The neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case at bar. Id. at 476 U.S. at 976-978, 106 S.Ct. at 1723.
After the prosecutor has presented reasons for the use of peremptory challenges which on the face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and the credibility of the explanation in order to determine whether there was purposeful discrimination in use of the challenges. State v. Collier, 553 So.2d 815, 820 (La.1989) citing Tompkins v. Texas, 774 S.W.2d 195, 202 (Tx.Crim.App.1987), affirmed without opinion by an equally divided court 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Batson, 476 U.S. at 98, 106 S.Ct. at 1723.
In the instant case, defendant made a timely Batson objection. But the trial court determined that the defendant did not establish his prima facie case pursuant *812 to the Batson rule in that he did not establish that the prosecutor was using peremptory challenges with purposeful discrimination as a motive. The record reveals that the state and the defense counsel stipulated that of the original twelve persons interviewed as prospective jurors, six were black with one black, Mr. Lewis, excused for cause. The record further shows that the state used two peremptory challenges against Chekita Dill and Brenda Combs, however, it did not use peremptory challenges against the three remaining blacks, Fred Ford, Leo Bell Knox, and Ethel Amos. The six-person jury who tried the case consisted of two black jurors. Based on our review of the record, we find no error in the trial court's finding that defendant failed to establish a prima facie showing of purposeful discrimination.
As a cautionary note, the trial judge directed the state to articulate neutral reasons for the challenge against Chekita C. Dill. Our review of those reasons similarly indicate no Batson violation. This assignment is without merit.
Assignment of Error No. 4:
Defendant requests that his sentence be reduced because it is excessive and the trial court failed to comply with the sentencing guidelines set forth in LSA-C.Cr.P. Art. 894.1. Defendant also claims that the sentence imposed was illegal in that he should not be sentenced to a jail term in default of payment of the fine imposed by the trial court.
As defendant was convicted of DWI-3rd offense, he was sentenced by the trial court to serve four years at hard labor, one year of which is to be served without benefit of probation, parole, or suspension of sentence, and fined $1,000 or six months in the parish jail in default of payment of said fine. The following is the possible sentence for driving while intoxicated as provides in LSA-R.S. 14:98 D in pertinent part:
On a third conviction, regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and may be fined not more than two thousand dollars. At least six months of the sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence.....
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within statutory limits. Absent a showing of manifest abuse of discretion, this court should not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, infra; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness *813 of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Minis, 550 So.2d 760 (La. App. 2d Cir.1989); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
The record indicates that the trial judge did take into account the guidelines as set forth by Article 894.1. Defendant was found to have been 39 years old at the time of sentencing. The trial judge noted in his reasons at sentencing, defendant admitted to being with his girlfriend and the two gentlemen who told him of his daughter's condition. He found that one of these people could have driven defendant to the hospital, therefore, the fact that he was anxious to ascertain his daughter's true condition in no way excused his behavior in driving while under the influence of alcohol. He noted further that defendant's actions could have resulted in death or serious injury to himself or others. Given defendant's two prior DWI convictions, the trial judge concluded that defendant had not responded favorably to substance abuse treatment, he would not likely respond favorably to probationary treatment, and he would likely drink and drive again. He further found that imprisonment would not entail any excessive hardship to defendant. Defendant had also been convicted of second degree battery. Though the four-year hard labor sentence is near the maximum punishment for this first felony offender, we find no abuse of discretion by the trial court.
Defendant also alleges that the sentence imposed was illegal because he is indigent and the sentence imposes a mandatory jail term in the event of default of payment of the fine imposed. He argues that because he was indigent at the time of trial, as is illustrated by the fact that he was appointed counsel from the Indigent Defender's Office, it can be urged that this portion of the sentence be vacated.
In State ex rel. Morales v. Court of Appeal Third Circuit, 575 So.2d 1389 (La. 1991), the supreme court vacated that portion of a sentence which mandated that the defendant would be imprisoned if he defaulted in paying a fine. The matter was remanded to the trial court for resentencing and for a determination of indigency. The court noted in Morales that if the relator was found to be indigent, the trial court was ordered to delete only that portion of the sentence which provided for a jail term in the event of default of payment of the fine imposed. An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. State ex rel. Morales, supra at 1389, citing Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
This court adheres to the Louisiana Supreme Court's decision in State v. Monson, 576 So.2d 517 (La.1991), which also remanded the matter to the district court for a determination of indigency. The court noted that if the relator is found to be indigent, the trial court is ordered to delete only that portion of his sentence which provides for a jail term in the event of default of payment of "restitution." An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In view of Morales and Monson, both supra, this court expressly declines to follow our previous decisions on this issue in State v. Lewis, 506 So.2d 562 (La.App. 2d Cir.1987) and State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989).

CONCLUSION
For the reasons set forth above, the defendant's conviction is affirmed. This case is remanded to the trial court to ascertain whether or not the defendant is indigent. If the defendant is determined to be indigent, the trial court is ordered to delete that portion of the sentence which imposes jail time in default of payment of the fine.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS.