CARAWAY, J.
 

 liA fight broke out during a birthday party at a public facility. As the party dispersed, multiple shooters began to fire gunshots into a crowd of exiting guests. Four victims sustained a total of ten gunshot wounds. Defendant was identified by several eyewitnesses as one of the shooters. He was charged by bill of information with attempted first degree murder and possession of firearm by a known felon, under La. R.S. 14:27, 14:30, and 14:95.1. After a jury found defendant guilty of both offenses, the trial court sentenced defendant under the habitual offender statute to 45 years for the crime of attempted first degree murder, to run concurrently with a 15-year sentence for the offense of felon in possession of a firearm. Defendant now appeals, alleging that there was insufficient evidence to convict. Defendant also asserts that the state failed to divulge exculpatory evidence and that the investigating police officers used an improper photo lineup. Furthermore, defendant challenges his habitual offender status and claims his sentence to be unconstitutionally excessive. For the following reasons, we affirm defendant’s conviction and sentence.
 

 Facts
 

 On the evening of June 9, 2007, Latisha Freeman, an Oak Grove resident, threw herself a birthday party at the Teen Center. The party commenced at 10:00 p.m. Freeman personally invited guests to her party and also publicly advertised the party by posting fliers throughout the area. As a result, approximately 100 to 200 people attended the party. A $3 cover charge was collected at the door and alcohol and a DJ were provided. | {¡Freeman testified that an estimated $300 was collected, but clarified that not every person in attendance that night was required to pay the cover.
 

 At approximately 1:00 a.m., the party came to an abrupt end when an altercation between guests at the party broke out. As the fight escalated and a crowd drew near, several witnesses testified to seeing Bryant Jones (“Jones”), another guest at the party, lift his shirt and display a handgun tucked into his waistband. Upon seeing this, Freeman grabbed the DJ’s microphone and announced that Jones had a gun. The lights were turned on and the DJ told the guests that the party was over. Thereafter, a sudden panicked crowd of
 
 *281
 
 guests made a hasty rush to the front door to exit the Teen Center. As the crowd exited the building through the front door, gunfire began and four victims were shot diming their attempt to escape: Latisha Freeman and Gawun Jordan were each shot once; Shakia “Honey” Freeman was shot twice; and David Carroll was shot six times, of which one bullet entered his chest, barely missing a vital organ. All four gunshot victims were immediately taken by personal vehicles to West Carroll Hospital.
 

 In the early morning hours of June 10, 2007, the Oak Grove Police Department received notice that gunshots were being fired at the local Teen Center. Officer Charles Allen Irby, chief investigative officer for the incident, testified that he received notice of the incident at 1:20 a.m. and immediately responded. Upon arrival at the Teen Center, Officer Irby began to recover physical evidence from the scene. Such evidence included approximately 20 spent shell casings of varying calibers, as well as several Ulive rounds, all of which were located in concentrated areas outside the Teen Center. Officer Irby believed that at least four or five different caliber weapons were fired that night. Blood splatters were found both inside and outside the Teen Center. Additionally, Officer Irby observed several bullet strikes on the front of the building, particularly at the front entrance. According to the evidence and witness statements, the four victims were in or near the front of the building when they were shot.
 

 After processing the crime scene, Officer Irby arrived at the West Carroll Parish Hospital, where he was able to talk to three of the four gunshot victims. Of the three, only Latisha Freeman was able to positively identify any of the shooters. Freeman was first interviewed on the night of the incident, where she only implicated Jones. The next day, she was interviewed at the police station, where she revealed that she additionally witnessed Reginald Turner possessing and shooting a gun at the Teen Center that evening.
 

 Four other witnesses corroborated the fact that Turner was in possession of a gun that night and furthermore, three of these witnesses saw him shooting that gun toward the Teen Center. All witnesses consistently revealed that defendant was holding a long gun with two hands. Based on these witnesses’ statements, a warrant was issued and Turner was arrested.
 

 On July 30, 2007, the defendant was charged by bill of information with attempted first degree murder and possession of a firearm by a convicted felon. Jones, who was also identified by witnesses as a shooter, was also arrested, tried and convicted of attempted first degree murder on |4October 25, 2007. His conviction was later affirmed in
 
 State v. Jones,
 
 43,968 (La.App. 2d Cir.2/25/09), 4 So.3d 950.
 

 Following a trial, Reginald Turner was convicted by a jury of attempted first degree murder and possession of a firearm by a convicted felon. After conviction, the state filed a habitual offender bill which alleged that the defendant had a prior conviction for aggravated battery in July of 1999. On April 29, 2009, the trial court conducted a hearing on the motion for post-verdict judgment of acquittal and the motion to quash the habitual offender bill. Both were denied.
 

 On April 29, 2009, Turner was sentenced to concurrent sentences of 45 years at hard labor on the charge of attempted first degree murder and 15 years at hard labor for possession of a firearm by a convicted felon. Defendant now appeals.
 

 
 *282
 

 Discussion
 

 Sufficiency of the Evidence
 

 Turner argues that the evidence adduced at trial is insufficient to find him guilty beyond a reasonable doubt of attempted first degree murder. He argues that the testimony of alleged eyewitness was so inherently contradictory that a reasonable jury could not have excluded every reasonable hypothesis of innocence.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under |
 
 ¡¡Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The
 
 Jackson
 
 standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 First degree murder, La. R.S. 14:30, provides in part:
 

 A. First Degree murder is the killing of a human being:
 

 (3)when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
 

 [r,An attempt to commit a crime is defined in La. R.S. 14:27, which provides in part:
 

 A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 In order to illustrate what the defense considers an irreconcilable conflict in witness testimony, he points specifically to the inconsistencies between Latisha Freeman’s testimony at Jones’s earlier trial and her testimony at this trial. In the October 2007 trial of codefendant Bryant Jones, Freeman affirmatively identified Jones as a shooter, but was unable to positively identify any other gunman; Freeman recalled seeing another shooter wearing a black shirt. In the present trial, Freeman testified in great detail that defendant was also a shooter at the Teen Center that night. At trial, she stated she overheard Turner say that he was going to his car “to get his heat.” She then saw defendant go to a red or burgundy car where he retrieved a large gun from the vehicle and proceeded to walk back toward the Teen
 
 *283
 
 Center. Although it was dark outside, Freeman testified that defendant was standing under a lamp post, enabling her to see as he pointed the gun toward the crowd exiting the building. He then began to fire. When asked about the inconsistent statement in the prior trial, Freeman responded, “I guess maybe because it wasn’t his trial I didn’t want to say anything.”
 

 Freeman also gave inconsistent statements to investigating police officers. On the night of the incident, she was questioned by Officer Irby while she was in the hospital being treated for a gunshot wound to her left 17foot. She identified only Jones as a shooter. The very next day, on June 11, 2007, she went to the police station to give an official statement, where she also implicated the defendant.
 

 Despite these discrepancies, Freeman’s testimony in the present trial is corroborated by numerous other eyewitnesses who unequivocally identified Turner as the shooter. A total of four additional witnesses testified to seeing Turner with a gun that night, three of whom actually saw him shooting. Turner’s first cousin, Shun-tae “Dottie” Turner, who had to be subpoenaed by the state to testify at trial, stated that she witnessed Turner holding a gun with two hands, shooting directly toward the crowd. Elaine “Candy” Freeman testified that she saw the defendant retrieve a “big old long gun” from a red vehicle. She then witnessed Jones firing a gun into the crowd of exiting guests. She did not see Turner actually firing the gun because she ran at the sight of gunfire. Nerissa Freeman testified that on the night of the party, Turner was wearing a black shirt and his hair was fashioned in long braids. She also testified that defendant walked toward a red vehicle then re-approached the Teen Center where she saw both Turner and Jones standing directly under a light pole, aiming fire directly at the crowd coming out of the building. Finally, Tyrone Johnson, who, despite testifying Turner went to a white truck to retrieve his weapon, gave a factual synopsis consistent with the other eyewitnesses.
 

 In light of the foregoing testimony, the jury was free to make a credibility determination and accept or reject the testimony of these witnesses.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). The reviewing court may impinge on the jury’s discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 Id.
 
 Because the record is void of internal contradiction or irreconcilable conflict with physical evidence, the testimony of state witnesses, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App. 2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35. In the present case, physical evidence, including casings found under the street lamp where Turner was seen shooting his gun, further substantiates eyewitness testimony.
 

 The state additionally proved that the defendant had the requisite specific intent under La. R.S. 14:27 and 14:30. The discharge of a firearm in the direction of a crowd of innocent bystanders has repeatedly been recognized in the jurisprudence as sufficient to prove specific intent to kill or inflict great bodily harm.
 
 State v. Mart,
 
 419 So.2d 1216 (La.1982);
 
 State v. Thomas,
 
 609 So.2d 1078 (La.App. 2d Cir.1992),
 
 writ denied,
 
 617 So.2d 905 (La.1993);
 
 State v. Allen,
 
 94-1941 (La.App. 1st Cir.11/9/95), 664 So.2d 1264,
 
 writ denied,
 
 95-2946 (La.3/15/96), 669 So.2d 433;
 
 State
 
 
 *284
 

 v. Powell,
 
 94-1390 (La.App. 1st Cir.10/6/95), 671 So.2d 493,
 
 writ denied,
 
 95-2710 (La.2/9/96), 667 So.2d 529;
 
 State in the Interest of L.H.,
 
 94-903 (La.App. 3d Cir.2/15/95), 650 So.2d 433;
 
 State v. Kennington,
 
 515 So.2d 521 (La.App. 1st Cir. 1987).
 

 lain
 
 State v. Seals,
 
 95-0305 (La.11/25/96), 684 So.2d 368, the Louisiana Supreme Court held that specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. Because five of the state’s witnesses testified that they observed defendant either holding or directly firing a gun into a crowd of people, defendant’s specific intent to kill may be inferred and the requisite elements of the crime of attempted first degree murder are established.
 

 After our review of the evidence presented at trial, viewed under the
 
 Jackson
 
 standard, we find sufficient support for defendant’s conviction of attempted first degree murder. Defendant’s assignment of error is therefore without merit.
 

 Defendant additionally assigns as error that there was insufficient evidence to support his second conviction of possession of a firearm by a convicted felon under La. R.S. 14:95.1. Athough he specifically makes this an assignment of error, this argument was neither argued nor briefed. Assignments of error which are neither briefed nor argued are considered abandoned. A mere statement of an assignment of error in a brief does not constitute briefing of the assignment, and therefore, this assignment is deemed abandoned.
 
 State v. Easter,
 
 32,940 (La.App. 2d Cir.4/7/00), 756 So.2d 703,
 
 writs denied,
 
 00-1321 (La.2/9/01), 785 So.2d 28, 00-2529 (La.6/29/01), 794 So.2d 823;
 
 State v. Williams,
 
 632 So.2d 351 (La.App. 1st Cir. 1993),
 
 writ denied,
 
 94-1009 (La.9/2/94), 643 So.2d 139.
 

 |
 
 -¡(Exculpatory Evidence
 

 Turner argues that the trial court erred in failing to grant a mistrial due to the state’s failure to disclose to him certain exculpatory evidence in violation of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Turner alleges that Officer Irby testified that there were other witnesses interviewed by the District Attorney’s office whose identities were not made known to the defense. During cross-examination of Officer Irby, defense counsel asked the officer if he had interviewed seven named individuals. Officer Irby stated that he had only talked to one of them. Officer Irby also testified that “a lot of those people that you mentioned plus more were interviewed,” but not by him.
 

 After a brief break, counsel for Turner moved for a mistrial on the grounds that the failure of the state to provide the names of the subject witnesses violated Turner’s right to the discovery of exculpatory evidence. Counsel argued Turner’s entitlement to the names or statements of these individuals “[i]f those statements were given by people that did not ... point their finger at my client Reginald Turner.” Counsel for the state argued that there was no evidence that any of these witnesses “saw anything exculpatory or otherwise.” After considering the arguments of counsel, the trial court denied Turner’s motion for mistrial on the grounds that the failure of the witnesses to see anything was not exculpatory evidence. Defense counsel lodged an objection to the ruling.
 

 Under Louisiana law, the prosecution is not required to provide unlimited discovery. However, the state must disclose all evidence h favorable to an accused, material to guilt or punishment.
 
 State v. Black,
 
 34,688 (La.App. 2d
 
 *285
 
 Cir.5/9/01), 786 So.2d 289,
 
 writ denied,
 
 01-1781 (La.5/10/02), 815 So.2d 881.
 

 Relating to sanctions for failure to comply with discovery, La.C.Cr.P. art. 729.5 provides in pertinent part:
 

 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
 

 Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown.
 
 State v. Williams,
 
 41,781 (La.App. 2d Cir.1/24/07), 950 So.2d 126,
 
 writ denied,
 
 07-0465 (La.11/2/07), 966 So.2d 599. Mistrial is a drastic remedy and is warranted only when substantial prejudice will otherwise result to the defendant sufficient to deprive him of a fair trial.
 
 Id.
 
 It is not mandatory that the trial judge declare a mistrial when it is brought to the court’s attention that one of the parties has not complied with a discovery request. The defendant must show prejudice to his rights to a fair trial in order for mistrial to be appropriate.
 
 Id.
 

 The inability of numerous armed robbery eyewitnesses to positively identify the defendant as a perpetrator has been held to be neutral evidence, not obviously exculpatory or clearly supportive of a claim of innocence |12which need not be disclosed.
 
 United States v. Rhodes,
 
 569 F.2d 384 (5th Cir.1978),
 
 cert. denied,
 
 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978).
 

 In this case, Turner presented no proof that the subject witness testimony was favorable to him. In fact, counsel argued only the possibility that other persons in the crowd provided exculpatory evidence. No evidence established these facts and the state claimed that the parties present at the scene who did not identify defendant were not disclosed because they saw nothing relating to his guilt or innocence. With these circumstances, the trial judge did not err in finding that the state was not required to disclose the names of these parties to Turner. Moreover, various witnesses who testified at trial were disclosed, and their identification and presence at the scene allowed defendant the opportunity to identify for himself the invited guests and others in the crowd who may have had relevant observations of the shooting. For these reasons, we find no abuse of discretion in the trial court’s denial of Turner’s motion for mistrial.
 

 Improper Photo Lineup
 

 Turner also argues that the investigating officer used an improper photographic lineup while interviewing eyewitnesses. Specifically, the defense asserts that the officer’s use of only Turner’s photograph to the witnesses constituted an unduly suggestive lineup.
 

 At trial, the supposed photographic lineup was mentioned twice during the testimony of Officer Irby. The defense first asked the officer about his interview of “these witnesses” with “one photograph” of Turner. Officer Irby testified that the photograph of Turner was not “for | ^identification” but rather an attempt to find out whether Turner was known as “Red.” Irby recalled that he showed the photograph to “either Craft or Hill” to find out if Turner and “Red” were the same person. No objection was lodged by defense counsel. Subsequently, the state
 
 *286
 
 asked Irby whether he showed Turner’s photograph to at least one witness. Irby testified “I believe so, I really don’t remember.” Irby then testified that it was done “for us to know who we were talking about.” No objection to the testimony was made at this time. Neither Anthony Craft nor Patrick Hill was called to testify at trial nor was a photographic lineup utilized by the state at trial.
 

 A new basis for an objection cannot be raised for the first time on appeal. La. C.Cr.P. art. 841;
 
 State v. Holmes,
 
 06-2988 (La.12/2/08), 5 So.3d 42,
 
 cert. denied,
 
 — U.S. -, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009);
 
 State v. Deal,
 
 00-0434 (La.11/28/01), 802 So.2d 1254,
 
 cert. denied,
 
 537 U.S. 828, 123 S.Ct. 124,154 L.Ed.2d 42 (2002). Because Turner offered no contemporaneous objection to the officer’s testimony regarding the photograph, any argument relating to this issue has not been preserved for appellate review. Moreover, considering the remaining independent identifications of Turner by other eyewitnesses, no prejudice has occurred in the admission of Officer Irby’s testimony. This argument is without merit.
 

 Sentencing Errors
 

 Habitual Offender Sentencing
 

 The defense argues the trial court committed error by sentencing Turner pursuant to the habitual offender statute. Defendant argues that a minute entry from his prior conviction was insufficient to prove the 114voluntary nature of his prior guilty plea and additionally argues the state failed to prove his date of discharge and thus, failed to prove that the “cleansing period” had not expired. Turner also contends that the trial court committed error by accepting a report made and submitted by his Parole and Probation Officer, Jerry D. Allen, at trial, as proof of his habitual offender status.
 

 To obtain a multiple offender adjudication against a defendant, the state must prove by competent evidence that there is a prior felony conviction and that the defendant is the same person convicted in the previous proceeding.
 
 State v. Jeffers,
 
 623 So.2d 882 (La.App. 2d Cir.1993). In order to enhance a sentence with a prior guilty plea, the state bears the burden of proving that the guilty plea was constitutionally taken. Before entering a guilty plea, a defendant must be advised of and waive his constitutionally guaranteed right to a jury trial, right to confrontation and privilege against compulsory self-incrimination.
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);
 
 State v. Flanagan,
 
 32,535 (La.App. 2d Cir.10/29/99), 744 So.2d 718.
 

 In
 
 State v. Shelton,
 
 621 So.2d 769 (La.1993), the Louisiana Supreme Court explained the process of proving prior felony convictions in habitual offender proceedings under La. R.S. 15:529.1:
 

 If the defendant denies the allegations of the bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. If the state introduces anything less than a 115“perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the state to determine whether the state has met its burden of proving that defendant’s prior
 
 *287
 
 guilty plea was informed and voluntary, and made with an articulated waiver of the three
 
 Boykin
 
 rights.
 

 In this case, there is no question that the state proved that Turner was the same person who pled guilty to the 1999 conviction for aggravated battery. At the hearing held on the motion to quash the state’s habitual offender bill, held on April 29, 2009, the state produced independent proof of the defendant’s prior conviction, including: (1) a certified copy of the bill of information and a certified copy of the court minutes dated July 9, 1999, detailing the plea; (2) defendant’s testimony from the present trial, where he admitted before the Court and before the jury that he was the same person who was convicted of the July 1999 aggravated battery; and (3) testimony of Jerry D. Allen, probation and parole officer.
 

 In
 
 State v. Bland,
 
 419 So.2d 1227 (La.1982), a habitual offender case, the Louisiana Supreme Court found a minute entry evidencing advisement of
 
 Boykin
 
 rights could be sufficient proof of a prior guilty plea. Further, in
 
 State v. Calhoun,
 
 42,896 (La.App. 2d Cir.1/16/08), 974 So.2d 805,
 
 writ denied,
 
 08-0579 (La.11/26/08), 997 So.2d 544, this court held that the state, through the use of a minute entry, met its burden of proof under
 
 Shelton
 
 by showing that the defendant was represented by counsel at the time of the plea.
 

 In the present case, the state offered certified copies of the minutes from East Carroll Parish of Turner’s prior conviction, dated July 9,1999, along with a copy of the bill of information. The minutes adequately reflect |1fithat Turner was present in open court with his attorney when he pled guilty to the amended charge of aggravated battery. The minutes indicate that the court advised the accused of his right to a trial, the right of confrontation of the witnesses, the right of self-incrimination and the right of appeal. The minutes also indicate that Turner informed the court he understood all of his rights and waived each of them. Turner withdrew his plea of not guilty and entered a plea of guilty to aggravated battery. The court accepted Turner’s plea and sentenced him to one year at hard labor, with credit being given for time served. The minutes therefore adequately demonstrate Turner was informed of each of his
 
 Boykin
 
 rights and thereafter waived each.
 

 Furthermore, the trial judge has the right to take judicial notice of any prior proceeding which was a part of the same case he has previously tried.
 
 State v. Bush,
 
 31,710 (La.App. 2d Cir.2/24/99), 733 So.2d 49,
 
 writ denied,
 
 99-1010 (La.9/3/99), 747 So.2d 536;
 
 State v. Martin,
 
 400 So.2d 1063 (La.1981);
 
 State v. Jones,
 
 332 So.2d 461 (La.1976).
 

 At the trial, the defendant took the stand and admitted that he was the same person who was convicted of the July 1999 aggravated battery. As stated above, the trial court was free to take judicial notice of this admission. Likewise, the trial testimony by Officer Allen was appropriate regarding the identification of the defendant and his prior conviction.
 

 After weighing the above evidence submitted by the state, we find that the state has carried its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of his
 
 Boykin
 
 rights. Because we find the state has met its burden of proof under |
 
 ^Shelton,
 
 the burden next shifts to defendant to present affirmative evidence of an infringement of his rights or an irregularity in the proceedings.
 

 During oral argument, attorney for the defense did not deny that Turner was represented by counsel and advised of his
 
 Boykin
 
 rights when he pled guilty to the
 
 *288
 
 1999 aggravated battery. However, counsel argued that Turner was not guilty of the crime and that he pled guilty simply because he was young and wanted to get out of jail quickly. Turner gave that testimony at trial regarding his prior conviction. Nevertheless, such testimony was not affirmative evidence indicating an infringement upon his
 
 Boykin
 
 rights given to him at that prior plea.
 

 It was further alleged that he was unaware of the future consequences of his guilty plea, notably the ability to enhance the sentence of a later felony conviction. Despite these assertions by defense counsel, there is no requirement that a defendant be informed that a guilty plea and conviction may be used as the basis for the filing of a future multiple offender bill. In the context of an habitual offender prosecution and the measure of a prior guilty plea, our jurisprudence has not seen fit to expand the scope of
 
 Boykin
 
 beyond the three rights enumerated therein to include advising the defendant of any other rights which he may have, or of the possible consequences of his actions. For purposes of reviewing the constitutionality of a previous guilty plea in a habitual offender setting, the defendant simply needs an understanding of the waiver of the three rights and the immediate consequences thereof in the proceeding in which the guilty plea is entered and not of possible consequences in future proceedings. It is not necessary | lsto inform a defendant that his guilty plea and conviction may be used to enhance the penalty to which he is subjected upon subsequent conviction for the same offense.
 
 State v. Nuccio,
 
 454 So.2d 93 (La.1984);
 
 State v. Green,
 
 36,741 (La.App. 2d Cir.3/5/03), 839 So.2d 970,
 
 writ denied,
 
 03-0973 (La.11/7/03), 857 So.2d 517;
 
 State v. Myers,
 
 503 So.2d 1085 (La.App. 2d Cir.1987).
 

 Because we find that the defendant failed to present affirmative evidence of an infringement of his rights or an irregularity in the proceedings, the state’s presentation of certified court minutes showing defendant was represented by counsel in addition to the testimonies of both defendant and his probation officer regarding his conviction, was sufficient to establish defendant’s status as second felony offender.
 

 Finally, the defense’s argument that the state failed to prove that the “cleansing period” had not expired under the habitual offender law is also without merit. Under La. R.S. 15:529.1(C), the habitual offender law does not apply “where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions ... and the commission of the last felony for which he has been convicted.”
 
 State v. Smith,
 
 05-0375 (La.App. 4th Cir.7/20/05), 913 So.2d 836,
 
 writ denied,
 
 07-0811 (La.1/11/08), 972 So.2d 1159. It is the date of actual discharge from supervision from the Department of Corrections that determines the expiration of the previous sentence.
 
 State ex rel. Wilson v. Maggio,
 
 422 So.2d 1121 (La.1982). Although the state has the burden of proving that the 10-year period has not expired, the state need not prove the | indischarge date when less than 10 years have elapsed between the last conviction and the subsequent conviction.
 
 State v. Smith, supra.
 
 Defendant was convicted of aggravated battery on July 9, 1999, and was convicted for the present offenses on April 29, 2009. Because ten full years had not yet elapsed between convictions, the state was not required to prove the date of discharge and defendant’s argument lacks merit.
 

 
 *289
 

 Excessive Sentence
 

 The defense additionally assigns as error that Turner’s sentence is constitutionally excessive. He argues that the trial court focused on the seriousness of the crime charged without giving adequate consideration to mitigating factors, including his young age and limited criminal history. Because Turner was adjudicated a second felony offender, he faced a sentence of not less than 25 years and not more than one hundred for the crime of attempted first degree murder. La. R.S. 14:30; La. R.S. 14:27(D)(l)(a); and La. R.S. 15:529.1(A)(l)(a). For this crime, Turner received 45 years at hard labor without benefit of probation or parole. For the crime of a felon in possession of a firearm,
 
 [1]
 
 defendant was sentenced to the maximum term of 15 years under La. R.S. 14:95.1, to run concurrently with the above sentence.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating | gpcircumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 483 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,350 (La.App. 2d Cir.8/13/08), 989 So.2d 267,
 
 writ denied,
 
 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App. 2d Cir.8/13/08), 989 So.2d 259,
 
 writ denied,
 
 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 07-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is 12i considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379.
 

 The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by the trial judge should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 *290
 

 State v. Williams,
 
 03-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing.
 
 State v. Cook,
 
 95-2784 (La.5/31/96), 674 So.2d 957,
 
 cert. denied,
 
 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.
 
 Id.
 

 We find adequate 894.1 compliance on the record before us. The record reveals that the trial court gave proper consideration to all aggravating and mitigating factors. Among the aggravating factors, the court took into consideration that the defendant was previously convicted of a violent crime, where he was originally charged with attempted first degree murder, the identical charge for the present conviction. Additionally, the court noted that the defendant’s conduct during the shooting manifested Indeliberate cruelty toward the victims when he knowingly created a risk of death or great bodily harm to more than one innocent person. The court also considered various mitigating circumstances, including the defendant’s young age, his young wife, his four young dependent children, and his good work history. The record clearly shows an adequate factual basis for the sentence imposed and the trial court, in its discretion, after weighing both the aggravating and mitigating factors, found that any lesser sentence would depreciate the seriousness of the offense.
 

 In reviewing the sentence for constitutional excessiveness, we find no abuse of discretion in the trial court’s choice of sentence. Given the seriousness of the defendant’s conduct, coupled with his proclivity for violence with firearms, the 15-year sentence for possession, which is to run concurrently with the 45-year sentence for attempted first degree murder, is neither grossly disproportionate to the severity of the offense nor shocking to the sense of justice. Therefore, this final assignment of error is without merit.
 

 For the foregoing reasons, Turner’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Turner was not sentenced under the habitual offender law for the crime of felon in the possession of a firearm.