868 So.2d 283 (2004)
STATE of Louisiana, Appellee,
v.
Edward MANNING, Appellant.
No. 38,083-KA.
Court of Appeal of Louisiana, Second Circuit.
March 12, 2004.
*284 Margaret Smith Sollars, Thibodaux, for Appellant.
Jerry L. Jones, District Attorney, R. Nicolas Anderson, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS, and GASKINS, JJ.
*285 BROWN, C.J.
A jury found defendant, Edward Manning, guilty of attempted possession of cocaine, a responsive verdict to the charge of possession with intent to distribute. Defendant was sentenced by the trial court to 18 months with a recommendation that he be allowed to participate in a work release program. A motion for reconsideration of sentence was denied. Claiming that it was error to allow an officer to give an opinion as an expert witness and that the evidence was insufficient to convict, defendant appealed. We affirm.

Discussion

Sufficiency of the Evidence[1]
This incident occurred at approximately 6:00 p.m. on December 14, 2001. Detective David May testified that he was the case agent in a "buy bust" operation targeting the College Point area of West Monroe, an area known for heavy drug trafficking. Officer Nikki Johnson and Det. Triche Passman, working undercover, occupied a vehicle outfitted with audio and video equipment. As this vehicle approached the intersection of Ridge and Tippit Streets, Leroy Warren was standing next to defendant's truck. Defendant and Don Washington were sitting in defendant's white truck, which was parked in a vacant lot near the intersection. The agents asked Warren for a $20 rock. Warren went to the white truck, got a rock of cocaine and returned to the agents' vehicle at which time the sale was completed. When the agents said they would be back for another buy, Warren replied that he would be there. As the undercover agents left, other officers moved in on defendant's truck. Warren ran. As Lt. James Purvis approached the truck, he smelled burning marijuana which defendant admitted he had been smoking. A search of the truck revealed 51 rocks of cocaine under a small pillow in the console area between the driver and passenger seats.[2] Both defendant and Washington were arrested for possession with the intent to distribute cocaine. After a short chase, Warren was caught and arrested for distribution of cocaine. The money used in the drug exchange, two $10 bills identified by serial numbers, was found near defendant's front left tire.
Det. Triche Passman was one of the undercover officers who made the buy. He got the cocaine from Leroy Warren, who got the rock from someone in the white truck. Det. Passman acknowledged that he never saw which person in the truck passed the rock to Warren.
Sgt. Harold Freeman testified that he found two $10 bills on the ground next to the left front tire of defendant's truck. He did not know how the money ended up on the ground. The money was identified as that used by Det. Passman in the buy from Warren. Lt. Purvis and Detective Matt Downhour also testified that they participated in the arrests of defendant and Washington. Lt. Purvis stated that he smelled marijuana as he approached the truck. Defendant was in the driver's seat and Washington in the front passenger seat. Lt. Purvis ordered defendant out of the vehicle and asked about the marijuana. Defendant admitted that he had been smoking marijuana and pointed out where the remainder of the blunt could be found. Defendant did not give the officers any trouble and gave consent to a search *286 of the truck. Det. Downhour seized the blunt and found 51 rocks of crack cocaine under a small pillow between the front seats. He found no paraphernalia associated with drug use in the truck. Defendant was the registered owner of the truck.
Detective May was qualified as an expert in the distribution of narcotics, particularly crack cocaine. He personally counted the number of rocks found in the truck, 51 in all, and determined that each one had a value of $20, for a total retail value of $1,020. After a defense objection, Det. May expressed his belief that the number and value of the rocks were inconsistent with personal use. When asked to explain why, another objection was made. The objection was overruled by the trial court and Det. May testified that the quantity found was more than would be in the possession of a user. Detective May explained how crack cocaine is used and testified that the items associated with use, such as glass pipes, needles, syringes, pieces of cotton or Brillo pads, were not found in the truck. Washington was in possession of $539. No money was found on defendant.
Det. May also noted that he did not find any cell phones or pagers on defendant and that the bag containing the 51 rocks of cocaine was small. He said that defendant readily admitted to Lt. Purvis that he had been smoking marijuana.
Leroy Warren, the last witness for the prosecution, waived his right against self-incrimination. Warren, who was currently in jail on armed robbery and attempted murder charges, agreed to testify in exchange for the hope of a lighter sentence.
Warren testified that both defendant and Washington are his cousins. He further admitted that he participated in the drug transaction by flagging down the undercover agents' vehicle and selling them the rock of cocaine which he got from Washington. Warren stated that Washington was in the truck on the passenger side and was speaking with T.J. (no last name given). Warren went to the driver's side, leaned into the truck, and got the rock from Washington. He said defendant was sitting on the driver's side. Warren testified that defendant did not appear surprised by what he saw, did not get out of the truck, or make Washington leave the vehicle. After selling the rock, Warren gave the money to T.J. at the rear of the truck because Washington told T.J. to hold on to it.
On cross-examination, Warren testified that he had smoked marijuana before and that it put him in a "zone," sort of like being in another world. Warren said that he had seen many people who were smoking marijuana ignore what was happening around them and that it was possible that defendant never knew what transpired.
Defendant testified after the state rested. Defendant stated that Don Washington and Leroy Warren were his cousins. Defendant related that after he got off work at 4:00 p.m., he went home and then went to get a haircut. On the way, he picked up Washington. He parked his truck and went into the barber shop, but was told that there were two ahead of him. Defendant returned to the truck to finish his marijuana cigar. Defendant testified that the undercover officers' truck pulled up and Warren made contact with the persons inside the truck. Defendant knew that Warren sold drugs. When Warren came to his truck, he leaned in the driver's window across defendant and spoke to Washington and T.J., who was standing outside of the passenger's side window. Warren got the "stone" and returned to the undercover officers' vehicle to make the sale. When Warren came back, defendant heard someone say, "Oh shit!" and *287 then Warren took off running. "That's when it all happened." Defendant testified that he thought T.J. had given the drugs to Warren.
After he got to the jail, defendant learned that Warren told the officers that Washington had given him the drugs. Defendant stated that he wasn't really paying attention to what was going on until the police arrived. He stated that he was employed driving a dump truck and had gotten off work that day around 4:00 p.m. This incident occurred at about 5:55 p.m. Defendant agreed that he was able to drive to the barber shop and understand that he had two persons ahead of him in line. Smoking marijuana made him mellow and put him in a daze, and he claimed that he didn't realize that anyone had any cocaine until Warren leaned into the truck. The only thing he told the police was that he had been smoking weed. He reiterated that he never knew Washington had cocaine in his truck.
Due process requires that no person suffer a criminal conviction except upon sufficient proof, that is, such evidence from which a rational juror could have found guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
To support a conviction for possession with intent to distribute or attempted possession, the state need not prove that the defendant was in physical possession of the drugs. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910. The term possession in La. R.S 40:967 is broad enough to encompass both actual and constructive possession. State v. Brisban, 00-3437 (La.02/26/02), 809 So.2d 923; State v. Blanchard, 99-3439 (La.01/18/01), 776 So.2d 1165; State v. Sandifer, 95-2226 (La.09/05/96), 679 So.2d 1324. Constructive possession may be found where the material is not in a person's physical possession, but is under his dominion and control. State v. Toups, supra; State v. Brisban, supra. A person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control. State v. Toups, supra. Packages of controlled dangerous substances found in a car near the driver generally are found to be in the driver's constructive possession. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993) (citations omitted). Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug. State v. Toups, supra; State v. Brisban, supra, citing State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). Guilty knowledge must necessarily be inferred from the circumstances. State v. Toups, supra; State v. Anderson, 36,969 (La.App.2d Cir.04/09/03), 842 So.2d 1222.
This case was based upon direct evidence; however, defendant's guilty knowledge, as in any criminal case, must be inferred from the known facts according *288 to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Anderson, supra. A determination of whether there is possession, actual or constructive, depends on the peculiar facts of each case. State v. Toups, supra.
Analyzing the facts of this case, we make the following observations. Defendant, the owner and driver of the parked truck, Leroy Warren, who sold the cocaine which he obtained from the parked truck to the undercover officers, and Don Washington, defendant's passenger, from whom Warren got the cocaine, were all cousins.
The bag containing 51 rocks of cocaine was just inches from both defendant and Washington, under a pillow between the small truck's bucket seats. Defendant admitted to having been smoking marijuana in the truck as he allegedly waited to get a haircut. We note, however, that defendant had no cash on his person with which to pay the barber.
When this incident occurred, defendant and Washington were 28 years old, while Warren was 18 years old. Defendant picked up Washington, drove to the street corner in question and waited with Washington in the truck while Warren stood outside waving down the undercover officers' vehicle. This area was known for drug trafficking.
The jury could have determined that this was a typical street corner drug operation involving a vehicle, containing the drugs; a driver/lookout/bodyguard; an 18-year-old kid outside waving down buyers; and, of course, a dealer. When the undercover officers drove up, Warren, known by defendant to sell drugs, went to the officers, came back to defendant's side of the vehicle, and spoke to Washington, who then handed Warren the rock, by literally reaching over defendant.
The standard of review as set forth in Jackson v. Virginia, supra, is whether a reasonable juror viewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution could have found the essential elements proven beyond a reasonable doubt. There is no other standard of review. Under the circumstances presented we cannot say that the jurors' findings were unsupported or unreasonable.

Expert Witness
Det. May testified that he has been a law enforcement officer for eleven years, the last seven of which he has been assigned to the FBI/Metro Narcotics Task Force. He has participated in numerous investigations of illegal drug activities and made numerous arrests of persons engaged in illegal drug activity. Det. May testified that he has spoken many times with individuals engaged in illegal drug activity and that he has specifically talked with them regarding the handling and sale of crack cocaine.
The courts have consistently allowed the expert testimony of narcotic officers to assist the jury in the common practices of drug trafficking. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165 (quantity of cocaine not for personal use); State v. Johnson, 34,902 (La.App.2d Cir.09/26/01), 796 So.2d 201 (officer's testimony that quantity was inconsistent with personal use was a proper factor to consider).
Det. May was qualified to give this type of expert testimony, and his observations were relevant. This assignment of error is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
GASKINS, J., concurring with written reasons.
*289 GASKINS, J., concurring.
I respectfully concur with the opinion penned by Chief Judge Brown. The jurisprudence supports a finding of constructive possession under the facts we have before us:
(A) That defendant is both driver and owner of the vehicle, and
(B) That the driver had access to the drugs, and
(C) That the drugs were found in close proximity to the defendant, and
(D) That, from the circumstances (drug sell in drug area), the defendant knew the drugs were in the vehicle.
If those were all the facts we had, we would undisputedly affirm a conviction. Yet, the defendant tried to convince the jury, and now us, that he had no dominion and control over the drugs because they belonged to his passenger. Evidence which supports the defendant's defense is:
(A) Warren's testimony that he got the drugs from defendant's passenger and
(B) Warren's testimony that the passenger told him to give the buy money to a third party, and
(C) The policy testimony that defendant had no money on him while the passenger had approximately $500 on him, and
(D) Defendant's testimony that he had nothing to do with the cocaine and was so zoned that he didn't know a drug deal had occurred.
The jury, in returning a guilty verdict to attempted possession of cocaine, apparently found that the defendant had the specific intent to possess drugs and did an act for the purpose of accomplishing the possession of drugs. While the exculpatory evidence may have convinced me as a trier of the fact that the defendant had no dominion and control, on review, it is our duty to reverse only when no reasonable evidence supports the jury's findings. The jury, who is vested with the task of determining credibility, found the defendant did have, or at least shared, dominion and control over the 51 rocks of cocaine placed under his daughter's pillow in his truck while he waited in a well-known drug area and while a drug transaction took place, literally, over him. The jury's determination under a Jackson v. Virginia analysis, must be upheld.
NOTES
[1] When sufficiency of the evidence is raised on appeal, it should be addressed first because if the accused is entitled to an acquittal, the matter is ended. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
[2] The truck, which was a compact size, had bucket seats.