949 So.2d 563 (2007)
STATE of Louisiana, Appellee
v.
Lamar JENKINS, Appellant.
No. 41,281-KA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
Rehearing Denied February 22, 2007.
*565 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Robert Nicholas Anderson, Assistant District Attorney, for Appellee.
Before CARAWAY, DREW and SEXTON (Pro Tempore), JJ.
DREW, J.
Lamar Jenkins was convicted at jury trial as charged of three crimes:
 Count One  La. R.S. 40:966(C)(2)  possession of Schedule I CDS, phencyclidine ("PCP"), for which he was sentenced to serve 15 years at hard labor,[1] five years of which to be served without benefit of parole, probation, or suspension of sentence;[2]
 Count Two  La. R.S. 40:967  possession of cocaine with intent to distribute, *566 for which he was also sentenced to serve 15 years at hard labor, two years of which to be served without benefit of parole, probation, or suspension of sentence;[3] and
 Count Three  La. R.S. 14:95(E)  possession of a firearm while in possession of a controlled dangerous substance, for which he was sentenced to serve five years at hard labor without benefit of parole, probation, or suspension of sentence.
The court ordered the sentences to be served concurrently. Jenkins now appeals his convictions and his sentences.

FACTS
Joel Mekus testified that:
 he was a supervisor with the State of Louisiana, Department of Probation and Parole, on October 6, 2003, the date in question, having served in that capacity for almost a decade, as of the date of trial;
 Jenkins was one of the people under his supervision as the result of a prior felony conviction;
 on October 6, 2003, he received a call from a Tasha Lister,[4] advising that Jenkins was at room 314 at the Windsor Inn[5] in Monroe, Louisiana, and might be violating the terms of his probation;
 he (Mekus), along with three other probation and parole officers, went to the Windsor Inn, apparently a former motel[6] converted into apartments;
 upon arriving he (Mekus) saw Jenkins and an unknown female standing outside room 314;
 Jenkins apparently recognized Mekus when the officers approached;
 Jenkins went into apartment 314, closing the door behind him;
 the officers then approached the female, who gave her name as Angela Williams, and they asked her about Jenkins;
 she replied that she did not know Jenkins, but moments later, Jenkins came out of the room;
 at first, she insisted the man's name was "Derrick";
 he (Mekus) asked Williams if any illegal activities were going on inside the apartment, and she responded in the negative;
 she gave consent to search the apartment;
 the officers found a clear plastic bag containing five or six rocks of crack cocaine on the night stand beside the bed;
 after the bag was found, the officers walked back outside where Mekus noticed Jenkins talking to Williams;
 he overheard Jenkins tell Williams to stop the search;
 Williams then told them that she wanted the search to stop;
 the officers contacted Metro Narcotics, and the search resumed after a search warrant was obtained, leading to *567 these other items of contraband being discovered in a black bag above a ceiling tile in the bathroom: (1) a vanilla extract bottle containing suspected PCP, (2) 15 to 20 rocks of crack cocaine, and (3) some powder cocaine.
Detective Jerry Melton testified that:
 as of the date of trial, he was a 12-year veteran of the Monroe Police Department, the last four years of which period he was assigned to the Metro Narcotics Unit;
 as of that same date, he responded to a call concerning narcotics in room 314 at the Windsor Inn;
 he observed the five or six rocks on the night stand;
 he did not participate in any search at the apartment, but acted as the evidence officer outside the apartment, providing chain of custody testimony about the drugs and a 22-caliber pistol;
 in particular, the black bag containing powder cocaine, 15 to 20 rocks of crack cocaine, and PCP was found by Agent Mekus above the ceiling of the bathroom closet, then given to Detective Zeigler, and then handed to him;
 Williams told him that none of the seized items belonged to her;
 Williams told him that Jenkins lived with her from time to time and that he had a key to her apartment;[7] and
 he was unsuccessful in lifting any fingerprints from the pistol, which was loaded at the time it was handed to him by Detective Passman.
Chris Colvin testified that:
 on the date in question, he was employed as a relatively new probation and parole officer;
 he was one of the officers who responded to the call on that date;
 he observed the defendant "duck into" room 314;
 he found a 22-caliber pistol "stuck down in a cushion of a recliner" that was covered with clothes;
 the revolver was loaded; and
 he turned it over to Detective Passman, who handed it to Detective Melton, who logged it into evidence.
Detective Triche Passman testified that:
 at the time of trial, he had worked for Metro Narcotics for five years;
 he went to the Windsor Inn on October 6, 2003, where he participated in a search of apartment 314;
 he turned the pistol over to Detective Melton; and
 he generally corroborated much of the testimony of the other officers and agents.
Mark Johnson testified very effectively that:
 on the date in question, he was a corporal in the Monroe Police Department, where he had been assigned to Metro Narcotics for several years;
 he had participated in the granting or obtaining of several hundred search warrants;
 he drafted the application for a search warrant in this case;
 he had participated in several hundred searches pursuant to those warrants;
 he had been qualified as an expert witness in the packaging, distribution, sale and value of controlled substances approximately 20 times in state court in Ouachita Parish and four times at the federal level; and

*568  after being qualified and accepted as an expert in that field, he testified that the drugs and weapon found in the case were consistent with distribution, rather than personal use.
Detective Jerry Melton returned to the stand simply to testify that there were no items such as crack pipes or suspected crack pipes found in the apartment. Similarly, Officer Mekus returned to the stand to testify that no crack pipe or "items associated with a crack pipe" were found in the apartment. This testimony was elicited to dispel the notion that these drugs were possessed for personal use only. The defense declined to put on any evidence. Jenkins was convicted as charged on all three counts. In due course he was sentenced as reflected hereinbefore, and he now appeals.

DISCUSSION
Sufficiency
Our law on sufficiency is clear and well settled.[8]
Jenkins clearly exercised some dominion and control over the apartment as shown by the testimony at trial that:
 as soon as the officers arrived, Jenkins turned and retreated into the room, closing the door behind him;
 Williams told the officers that Jenkins resided there from time to time, and had a key;
 Jenkins told Williams to insist that the officers stop the search, which she did, and which they did;
 Jenkins had obviously been in close proximity to the drugs, having access to the unit; and
 there was only one doorway, which leads one to suspect that it was a small converted motel room, making it more likely that the defendant knew what was inside the unit.
Corporal Johnson's testimony was very convincing that the items found in the apartment were consistent with distribution, as opposed to personal use. His testimony was that:
 no crack pipe was found (which could indicate personal use); and
 the packaging of the drugs, along with the quantity, as well as the presence of the gun, were indicative of possession with intent to distribute.
The provisions of La. R.S. 40:966 make it unlawful for any person to knowingly or intentionally possess certain controlled dangerous substances, including phencyclidine (PCP). To support conviction for possession, the state does not need to prove the defendant was in physical possession of the drugs; the term "possession" *569 is broad enough to encompass both actual and constructive possession. State v. Manning, 38,083 (La.App. 2d Cir.03/12/04), 868 So.2d 283. Constructive possession may be found where the material is not in a person's physical possession, but is under his dominion and control; a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910.
Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug, and a defendant's guilty knowledge must be inferred from the known facts according to reason and common experience. State v. Hill, 38,400 (La.App. 2d Cir.6/23/04), 877 So.2d 173; State v. Manning, supra.
The six rocks on the night stand are clearly imputable to Jenkins. Less obvious is our conclusion that Jenkins had ample access to the firearm. However, the state did not satisfy its burden of proof connecting the contents of the black bag, hidden above the ceiling of the bathroom closet, to Jenkins. While the evidence certainly preponderates as to his guilt on all charges, convictions require proof of all elements of the crime, beyond a reasonable doubt.
Weaknesses of the state's case concerning the drugs in the black bag concealed in the ceiling include the following:
 no fingerprints;
 no DNA;
 no testimony as to whether there is a general record of drug activity in this specific area;
 no observation on that date of any apparent drug activity by anyone, including Jenkins;
 no way to tell how long Jenkins had been there;
 no way to tell how long the drugs in the bathroom had been there; and
 no testimony as to the size and layout of the room/apartment.
Several factors may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession. They are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of drug paraphernalia; and (6) evidence that the area was frequented by drug users. See State v. Douglas, 30,393 (La.App. 2d Cir.2/25/98), 707 So.2d 512.
Of these six factors, we find that the state has proven that the defendant had access to the area where the six rocks and the pistol were found. We find, however, that the contents of the black bag were not tied to Jenkins beyond a reasonable doubt, even examining the evidence in a light most favorable to the prosecution. This leaves the state with the following evidence:
 six rocks of crack on the night stand, an amount certainly more consistent with personal use, than with an intent to distribute; and
 a pistol hidden under the cushion of a recliner.
Concerning the six rocks and the pistol, we find, under the Jackson standard, and considering the small amount of drugs imputable to the defendant, that only the elements of illegal possession were proven. From the seizures imputable to Jenkins, the jury could reasonably have concluded beyond a reasonable doubt *570 that Jenkins knew the pistol and this small amount of cocaine were in the apartment, under his dominion and control. The state did not prove that Jenkins should be tagged with the contents of the black bag.
Double Jeopardy
This leaves the defendant with two convictions:
 Count Two  Possession of cocaine; and
 Count Three  Possession of a firearm while possessing a controlled dangerous substance, cocaine.
Every element of Count Two is included in Count Three, making these two remaining charges duplicitous, requiring us, sua sponte, to acquit on the least onerous conviction, Count Two.
To rebut a claim of double jeopardy, each offense must require proof of an element that is not required in proving the other. See State v. Barakat, 38,419 (La.App. 2d Cir.6/23/04), 877 So.2d 223, citing Blockburger v. U.S., 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Since the contents of the black bag are not imputable to the defendant, the remaining two convictions fail the Blockburger test. As we are therefore constrained to throw out Count Two, the defendant is left with a conviction for only Count Three.
Excessive Sentences
Since we are acquitting Jenkins on Counts One and Two, any sentencing issues relative to those two charges are moot.
Jenkins was sentenced on Count Three to serve five years in prison without benefits of probation, parole, or suspension of sentence. No fine was imposed. The sentence on Count Three is clearly not shocking when considering the past history of this felon, who was still under supervision on the date of this crime.
In summary:
1. We find the defendant not guilty on Counts One and Two.
2. We affirm the conviction and sentence on Count Three.

DECREE
The convictions on Counts One and Two are REVERSED. The conviction and sentence on Count Three are AFFIRMED.
SEXTON, J. (Pro Tempore), concurs.

APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, LOLLEY and SEXTON (Pro Tempore), JJ.
Rehearing denied.
NOTES
[1] The trial court mistakenly advised that the possible sentence for this crime was five to 30 years with or without hard labor, which is the current sentencing exposure for a conviction of the possession of PCP. At the time of the offense, the actual exposure was five to 20 years with or without hard labor.
[2] The defendant was advised by the trial court that, because of R.S. 15:574.4, the reality was that he was not entitled to parole eligibility for any of the sentence. This is true, but not because of the sentencing restrictions of this particular crime, but because of the parole eligibility limitations for third felony offenders in the state of Louisiana.
[3] See Footnote 2.
[4] Jenkins is her baby's daddy. We surmise that there were evidently hard feelings relative to this failed relationship.
[5] At various times at trial, unit 314 of the Windsor Inn is described as a room or as an apartment. No dimensions of the living area can be found in the record. There was testimony that Angela Williams was "living" there. The record is bereft of any meaningful information about the crime situation at the Windsor Inn and in the area around the establishment. This information may have proven helpful to us on appeal.
[6] There was only one door into and out of apartment/room 314.
[7] This information was recited at trial, without objection.
[8] The constitutional standard for testing sufficiency of the evidence is enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); that standard requires a conviction to be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). When circumstantial evidence is used to prove the commission of an offense, the provisions of La. R.S. 15:438 mandate that, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded in order to convict. The provisions of La. R.S. 15:438 do not establish a separate standard from the Jackson standard, but rather provide a helpful methodology for determining the existence of reasonable doubt; ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, supra.