MOORE, J.
|! Cedric Dewayne Russell, a/k/a Eric Wilson, appeals his conviction for possession with intent to distribute a Schedule II controlled dangerous substance (cocaine), his adjudication as a fourth felony offender, and his sentence of 45 years at hard labor without benefits. For the reasons expressed, we affirm the conviction; however, we reverse the adjudication as a fourth felony offender, vacate the sentence and remand the case for further proceedings.

Factual Background

In late July 2006, Shreveport Police Agent Erick Ardoin obtained a “no-knock” search warrant for 4706 Adams Street in Shreveport’s Caddo Heights neighborhood. On July 31 at 1:00 p.m., on information that the suspected drug dealer, Russell, would be at home, a special response team surrounded the house and a street level interdiction unit forced open the door to execute the warrant. Russell was not in the house, but his girlfriend, Felicia Stewart, was; agents arrested her and found a small amount of marijuana in a pink plastic bag in plain view in the living room.
Caddo Parish Sheriffs Officer Jamie McLamb led his Belgian Malinois, Congo, around the perimeter; Congo sniffed out a quantity of cocaine (later determined to be 12 grams) in a Ziploc bag concealed on the inner ledge of a pier and beam supporting the house. Next to the large Ziploc bag was a smaller plastic bag containing about 100 very small, pink Ziploc “jeweler bags.”
Agents seized and secured the drugs and bags. They also seized photographs showing Russell and Ms. Stewart together, as well as several ^pieces of mail addressed to Russell at 4706 Adams Street.
Sometime during the search, a man matching Russell’s description approached the house on foot. Agent J. Allen Alkire, who was working the perimeter, recognized him and started walking toward him; the man turned around and ran south toward Hollywood Avenue. Agent Alkire gave chase but the fleeing man got away; Alkire was certain it was Russell.
Four days later, the street level interdiction unit returned to the house at 1:00 p.m. and found Russell sitting in the living *995 room watching TV. Agent Ardoin arrested him without incident.

Procedural History

The state initially charged Russell with two counts of distribution of cocaine, for incidents occurring in late July 2006, and one count of possession with intent to distribute cocaine, arising from the search and seizure on July 81. On the morning of trial in February 2008, the state amended the bill to charge only possession with intent to distribute cocaine.
Testifying for the state, Agents Ardoin and Alkire and Officer McLamb set out the facts summarized above. Randall Ro-billard, an expert from the North Louisiana Crime Lab, confirmed that the material seized from the living room was 1.14 grams of marijuana and that seized from the pier and beam was 12 grams of cocaine. Police Sergeant Carl Townley, an expert in narcotics, testified that this amount of cocaine was much greater than normal for personal use; in fact, it was worth about $1,600 on the street and the 100 or so jeweler bags were consistent with distribution. Sgt. Townley also testified that in the drug community, there is a widespread |a(yet erroneous) belief that if drugs are found under a house, the owner of the house cannot be charged. Lt. Owen McDonnell, an expert in fingerprint identification, testified that it was very difficult to lift latent prints off plastic bags, and that he would not process tiny jeweler bags. Aside from cross-examining the state’s witnesses, Russell put on no evidence.
The 12-member jury unanimously found Russell guilty as charged. Russell filed two motions for new trial and one for post verdict judgment of acquittal; these were denied after hearings over several months.
The state filed a bill of information charging Russell as a fourth felony offender, citing as predicate offenses his 1990 guilty plea to unauthorized use of a movable, 1992 guilty plea to possession of cocaine and 1996 guilty plea to simple burglary. Russell filed a motion to quash the multiple offender bill, alleging inter alia that when he entered his 1996 guilty plea, the district court failed to advise him adequately of his right of confrontation under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). After a hearing in August 2009, the court denied the motion to quash, finding that the 1996 Boykin colloquy was “somewhat inartfully” expressed yet sufficient. The court adjudicated him a fourth felony offender and sentenced him to 45 years at hard labor, without benefit of probation, parole or suspension of sentence. The court denied Russell’s motion to reconsider sentence, and this appeal followed.

Discussion: Sufficiency of Evidence

By his first assignment of error, Russell urges the evidence was insufficient to convict him of possession with intent to distribute. He ^concedes that the state offered evidence that the cocaine was in a form usually associated with distribution, but argues the state failed to prove he had actual or constructive possession of it, according to the factors in State v. Douglas, 30,393 (La.App. 2 Cir. 2/25/98), 707 So.2d 512. He specifically contends the state failed to prove he knew that the cocaine was under the house, that he had recently used cocaine, or that the house was frequented by drug users. He suggests that the circumstantial evidence shows that not he but Felicia Stewart was in possession of the cocaine.
The state responds that officers seized pictures of Russell from the house, as well as mail addressed to him there; during the raid, a person matching Russell’s description walked toward the house but turned and ran upon seeing Agent Alkire; and the *996 plastic bag of marijuana found in the living room was pink, matching the baggies found under the house. The state submits that this evidence negates any claim that somebody else put the cocaine under the house.
The standard of appellate review is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921. Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 states that “assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence.” However, R.S. 15:438 does not | .^establish a stricter standard than Jackson v. Virginia; rather, it serves as a helpful evidentiary guide for jurors in evaluating circumstantial evidence. State v. Major, 2003-3522 (La.12/1/04), 888 So.2d 798.
It is unlawful for a person knowingly or intentionally to “produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance * * * classified in Schedule II.” La. R.S. 40:967 A(1). Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. State v. Major, supra. Constructive possession depends on dominion and control over the drugs, even in the absence of physical possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337. Mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, but the courts consider various factors to determine whether a defendant exercised sufficient dominion and control to constitute constructive possession, including (1) his knowledge that drugs were in the area, (2) his relationship with the person, if any, found to be in actual possession, (3) his access to the area where the drugs were found, (4) evidence of recent drug consumption, and (5) his physical proximity to the drugs. State v. Toups, 2001-1875 (La.10/15/02), 833 So.2d 910; State v. Douglas, supra. A person may be deemed to be in joint constructive possession of drugs that are in the physical control of a companion, if he willingly and knowingly shares with that person the right to control them. State v. Toups, supra; State v. Jenkins, 41,281 (La.App. 2 Cir. 1/24/07), 949 So.2d 563, writ denied, 2007-0699 (La.11/2/07), 966 So.2d 600.
This record supports the finding that Russell exercised dominion and control over the cocaine stashed on the pier and beam under the house. Even though he was not there when agents executed the search warrant, his girlfriend Ms. Stewart was, as were pictures of him with Ms. Stewart and mail addressed to him at the address; four days later, agents found him at the house. This evidence easily shows that Russell exercised dominion and control over the house and distinguishes the case from State v. Douglas, supra, and the cases cited therein. Moreover, Agent Al-kire testified that during the raid, a man fitting Russell’s description approached the house but, on seeing the special response team, fled and eluded police. A trier of fact could reasonably find that Russell did this because he knew that drugs were hidden in the house and wished to escape arrest. Finally, the cocaine was cleverly concealed on a pier and beam under the house, a relatively inaccessible cache which was uncovered only by *997 Congo, a sniffer dog. The jury could reasonably reject the implausible theory that some unrelated third party might have stashed the cocaine there. If, as Russell suggests, it was actually his girlfriend who planted the cocaine there, then the jury could find he had joint constructive possession. State v. Jenkins, supra.
This assignment of error lacks merit.

Evidence of Prior Bad Acts

By his second assignment of error, Russell urges that he was prejudiced by the state’s improper introduction of evidence of his prior bad acts. On cross-examination by defense counsel, Agent Ar-doin testified that |7he went to the house because of Russell. Defense counsel asked:
Q. But yet, you arrested Felicia Stewart for possession with intent to distribute.
A. That’s correct.
Q. Why?
A. Because she was present when I made undercover buys from Mr. Cedric Russell.
Defense counsel objected to Agent Ar-doin’s response on grounds that it was nonresponsive and misleading, chiefly in that it was a confidential informant, not Agent Ardoin, who made the undercover buys; counsel did not move for mistrial. Russell now argues that although evidence of the drug sales may have been admissible under La. C.E. art. 404 B, the state failed to meet the other criteria for admissibility under Art. 404 B and provided no notice of its intent to use such evidence as required by State v. Prieur, 277 So.2d 126 (La.1973).[1] He contends that this evidence prejudiced him by telling the jury something the physical evidence did not — that he had recently been in physical possession of cocaine. He concludes that he is entitled to a permissive mistrial under La. C. Cr. P. art. 771.
The state concedes that Agent Ardoin referred to prior bad acts on cross-examination, and that the prosecutor briefly revisited the topic on redirect and in closing argument. The state shows, however, that Russell failed to move for a mistrial, as required by La. C. Cr. P. arts. 770 and 771, and argues that the erroneous admission of prior bad acts is subject to | ^harmless error review. State v. Gatti, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511, and citations therein. The state suggests that Agent Ardoin’s remark had no conceivable effect on the verdict.
Mistrial is a drastic remedy which should be declared only upon a clear showing of prejudice by the defendant. State v. Leonard, 2005-1382 (La.6/16/06), 932 So.2d 660; State v. Turner, 44,920 (La.App. 2 Cir. 2/3/10), 32 So.3d 277, writ denied, 2010-0680 (La.3/25/11), 61 So.3d 657. The state cannot be charged with testimony elicited by defense counsel implying that the defendant has previously committed other crimes. State v. Kimble, 375 So.2d 924 (La.1979); State v. Tribbet, 415 So.2d 182 (La.1982). When defense counsel elicits the contested response by asking an open-ended question to a law enforcement officer, there is no error in the trial court’s failure to grant a mandatory mistrial under La. C. Cr. P. art. 770. *998 State v. Jones, 588 So.2d 805 (La.App. 2 Cir.1991). Moreover, without a showing that the officer engaged in a pattern of unresponsiveness or improper intent, there is no ground for a permissive mistrial under La. C. Cr. P. art. 771. Id.
The state did not elicit any damaging testimony from Agent Ardoin; rather, defense counsel did so by asking an open-ended question about why he arrested Ms. Stewart. For this reason, the court was not required to grant a mandatory mistrial. Id. Further, there is no showing that Agent Ardoin was unresponsive to defense counsel or exhibited any improper intent to place Russell’s prior bad acts before the jury; thus the court did not err in |/ailing to grant a permissive mistrial. Id.; State v. McGuffey, 486 So.2d 1101 (La.App. 2 Cir.1986).
This assignment of error lacks merit.

Ineffective Assistance of Counsel

By his third assignment of error, Russell urges that to the extent his attorney “opened the door” to the admission of prior bad acts or failed to preserve his objection thereto, this was ineffective assistance of counsel that prejudiced Russell. He again cites the colloquy in which counsel asked Agent Ardoin why he arrested Felicia Stewart and Ardoin replied because she was present when Russell sold drugs. Russell argues that under the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel’s performance was deficient for failing to object to a valid error, State v. Allen, 2003-2418 (La.6/29/05), 913 So.2d 788, cert. denied, 547 U.S. 1132, 126 S.Ct. 2023, 164 L.Ed.2d 787 (2006); and the failure was prejudicial, as Ardoin’s response was the only evidence directly linking Russell to the cocaine found under the house. He concludes that counsel’s ineffective assistance warrants the grant of a new trial.
The state responds that the claim of ineffective assistance is normally deferred to post conviction relief, but the court may address it on direct appeal when the record is sufficient to support or refute the claim. State v. Ratcliff, 416 So.2d 528 (La.1982). The state submits that in light of the great deference accorded to counsel’s trial strategy, State v. Moore, 575 So.2d 928 (La.App. 2 Cir.1991), and the strength of the state’s evidence, Russell cannot prove either prong of Strickland on the instant record.
Claims of ineffective assistance of counsel are normally addressed not on direct appeal but by post conviction relief, in which the trial court may conduct a full evidentiary hearing. State v. Leger, 2005-0011 (La.7/10/06), 936 So.2d 108; State v. Robinson, 45,820 (La.App. 2 Cir. 1/26/11), 57 So.3d 1107. However, when the record is sufficient, the court may consider the issue on direct appeal in the interest of judicial efficiency. State v. Leger, supra; State v. Robinson, supra. Under the standard set out in Strickland v. Washington, supra, a reviewing court must reverse a conviction if the defendant establishes that (1) counsel’s performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel’s inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Leger, supra. The appellate court does not sit to second-guess strategic and tactical choices made by trial counsel. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542; State v. Robinson, supra.
On close review, we find the record is sufficient to address the issue of ineffective assistance. Apparently in a strategic effort to shift blame from Russell to Felicia Stewart, trial counsel asked Agent Ardoin *999 why he arrested Ms. Stewart. Unfortunately, the question drew the unexpected response that she had been present when Russell sold drugs on prior occasions. The answer was obviously incriminating to Russell, but we will not second-guess counsel’s attempt to show that it was really Ms. Stewart, not Russell, who possessed the cocaine found under the house. Moreover, counsel promptly asked the court to remove the jury and objected that the agent’s |T answer was nonresponsive and incorrect. This strikes us as a reasonable attempt to control the damage. On this record, we simply cannot say that counsel’s performance fell below an objective standard of reasonableness under prevailing professional norms.
This assignment of error lacks merit. On application for post conviction relief, however, Russell may introduce evidence to support this and any other claim of ineffective assistance.

Multiple Offender Adjudication

By his fourth assignment of error, Russell urges the court erred in finding him a fourth felony offender. He shows that for a prior guilty plea to be used as a predicate for a multiple offender bill, the defendant must have been advised of (1) the right against self-incrimination, (2) the right to a jury trial, and (3) the right of confrontation. Boykin v. Alabama, supra; State v. Battle, 552 So.2d 503 (La.App. 2 Cir.1989). He then cites this colloquy from his 1996 guilty plea to simple burglary:
Q. Do you understand by pleading guilty you waive your right to a trial by jury?
A. Yes, sir.
Q. Do you understand by pleading guilty you waive your right to confront them at trial?
A. Yes, sir.
Q. Do you understand by pleading guilty you waive your right against self-incrimination?
A. Yes, sir.
(Emphasis added.)
[12Russell argues that the court taking this guilty plea failed to mention the word “witness,” thus making it impossible to interpret the colloquy as adequately advising him of his right of confrontation. He argues that this complete omission of the crucial concept distinguishes the case from State v. Anderson, 34,491 (La.App. 2 Cir. 4/4/01), 784 So.2d 749, writ denied, 2001-1431 (La.4/12/02), 812 So.2d 666, which approved a Boykin colloquy that referred to the defendant’s “right to confront your witnesses and to cross-examine them at trial.” He concludes that the fourth felony offender adjudication should be vacated.
The state concedes that the 1996 guilty plea was “not an ideal Boykin colloquy.” However, it argues that Russell had been “through the process several times before,” receiving his Boykin rights when he pled guilty to unauthorized use of a movable in 1990 and to possession of cocaine in 1992. The state contends that courts may look to an “expanded record” to determine whether a voluntary waiver occurred. State v. Lawson, 410 So.2d 1101 (La.1982). The state suggests that because of Russell’s two prior guilty pleas, and the absence of any indication that he misunderstood his rights in the 1996 colloquy, the district court was not wrong to find compliance with Boykin.
The Constitution requires that a guilty plea be recorded showing that the defendant was informed of and waived his constitutional right against compulsory self-incrimination, the right to trial by jury, and the right to confront one’s accusers. Boykin v. Alabama, supra; State v. Markray, 45,129 (La.App. 2 Cir. 4/21/10), *1000 35 So.3d 453. The trial court cannot rely 11son an assumption that defense counsel adequately informed the defendant of his rights. State v. Williams, 384 So.2d 779 (La.1980). In a felony case, a court shall not accept a plea of guilty without first addressing the defendant personally in open court and informing of, and determining that he understands, inter alia, the right to confront and cross-examine the witnesses against him. La. C. Cr. P. art. 556.1 A(3).
No specific articulation of the defendant’s rights is required or sacramental. State v. Smith, 375 So.2d 1328 (La.1979). However, the core concept of the rights must be conveyed. For example, advising the defendant he has a “right to remain silent” is insufficient to describe the right against self-incrimination at trial, State v. Rohicheaux, 412 So.2d 1313 (La.1982), and advising of a “right to trial” is insufficient to describe the right to a jury trial, State v. Santiago, 416 So.2d 524 (La.1982).
On this record, we are constrained to agree with Russell that at the 1996 guilty plea, the district court omitted the core concept of confronting the witnesses against him. The mere mention of “your right to confront them at trial,” without an antecedent (except perhaps the jury, mentioned in the preceding sentence) is not adequate. If Boykin does not guarantee this simple right, it guarantees virtually nothing.
We are aware that the supreme court has adopted a policy of refusing to treat Boykin rights expansively. See, e.g., State v. Juniors, 2003-2425 (La.6/29/05), p. 60, 915 So.2d 291, 334. In recent cases arising from this court, the supreme court has interpreted ambiguous Boykin colloquies as adequately advising the defendant of his rights. In State v. Mendenhall, 2006-1407 (La.12/8/06), 944 So.2d 560, the court approved advising the defendant, ‘Tour attorney would cross-examine the D.A.’s witnesses.” In State v. Smallwood, 2006-2363 (La.5/18/07), 955 So.2d 1264, the court approved advising the defendant that his “attorney would have the opportunity to cross-examine the state’s witnesses at trial.” In State v. Dodson, 2007-0057 (La.11/2/07), 967 So.2d 487, the court approved advising the defendant that his attorney could “examine the D.A.’s witnesses during the course of trial.” The running theme of these cases is that mention of “the state’s witnesses” or “the D.A.’s witnesses” is adequate to convey the sense of the witnesses against him. Here, however, advising Russell that he could “confront them at trial,” without any antecedent, is inadequate to support the kind of interpretation applied in Mendenhall, Smallwood and Dodson, supra. As in State v. Markray, supra, we find no evidence that Russell was properly advised of his right of confrontation at his 1996 guilty plea.
Finally, the state correctly shows that courts may look to an “expanded record” to determine whether a voluntary waiver occurred. State v. Lawson, supra. Even though Russell’s 1996 guilty plea was his third trip “through the process,” the court minutes show that he had never participated in an adversarial hearing such as a preliminary exam, motion to suppress, or a trial on the merits; there is nothing from which we can infer he had prior exposure to the right of confrontation. Admittedly, the transcript of the 1990 guilty plea shows that Judge Hamilton fully advised Russell of his Boykin rights; the minutes of the 1992 guilty plea (no transcript was | ^offered) recite that the same judge advised him “as per Boykin v. Alabama.” These occurred, however, over four years earlier. In light of the court’s total failure in 1996 to mention “accusers” or “witnesses against him,” the *1001 good 1990 Boykin is too attenuated to impute advice about the right of confrontation to the 1996 Boykin. The expanded record simply will not support the use of the 1996 guilty plea as a predicate offense. The district court erred in denying the motion to quash.
This assignment of error has merit. Russell’s adjudication as a fourth felony offender is reversed, his multiple offender sentence vacated, and the case remanded to the district court for further proceedings.

Conclusion

In light of our ruling on the multiple offender adjudication, we pretermit any consideration of Russell’s fifth assignment of error, which challenged his sentence as excessive. We have reviewed the entire record and found nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, the conviction is affirmed, but the multiple offender adjudication is reversed, the sentence vacated, and the case remanded for further proceedings.
CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION REVERSED, SENTENCE VACATED, AND CASE REMANDED FOR FURTHER PROCEEDINGS.
GASKINS, J., concurring in part and dissenting in part.

. As noted earlier, the original bill of information charged Russell with two counts of distribution of cocaine, arising from controlled sales on July 19 and July 27, 2006, the incidents which provided probable cause for the no-knock search warrant executed on July 31. The state did not amend the bill to drop the two distribution charges until the morning of trial, February 26, 2008. In these circumstances, the state would not have given Prieur notice prior to trial.