DREW, J.
| Rodney Torenzo Johnson was convicted of possession with intent to distribute a Schedule II controlled dangerous substance (cocaine). La. R.S. 40:967(A)(1). After pleading guilty as a second-felony offender, he was sentenced to serve an agreed-upon 25 years at hard labor, without benefit of probation or suspension of sentence. He appeals. We affirm in all respects.
FACTS
Agent Steve McKenna, a Shreveport
Police narcotics officer, testified that:
• while patrolling the Allendale area of Shreveport, a high-crime area, he and his partner, Agent Sanders, noticed Johnson sitting in a vehicle that was blocking the sidewalk at 1823 Anna Street;
• he approached Johnson to talk to him about the parking violation;
• he was already familiar with Johnson, who appeared very nervous;
• he asked if he could search the vehicle, and Johnson consented;
• during the search, another officer[1] interviewed Johnson;
• after the search, he noticed a small brown bag about a yard from the car;
• the bag contained 24 small Baggies of crack cocaine, weighing 6.2 grams;
• he arrested Johnson, and immediately advised him of his Miranda[2] rights;
• Johnson said he was holding the narcotics for someone else;
• the term “holding” on the street meant that the individual is holding the narcotics for someone else, but also selling them for that person;
1it is a common practice for criminals to try to conceal narcotics or throw them away from their person when approached by law enforcement;
• he did not see Johnson throw, kick, or drop anything on the ground;
• when Johnson was searched upon exiting his vehicle, no drugs or money were found on his person or in his vehicle; and
• no other people in the area were arrested because of Johnson’s admission.
Agent Terry Sanders testified that:
*1204 • it is common for drug dealers to keep narcotics a short distance from them for the purpose of having a potential alibi;
• he and Agent McKenna were patrolling the Allendale area, an area known for narcotics sales and usage, and saw Johnson in a vehicle blocking a sidewalk;
• two other people were in the middle of the street near a black pickup truck;
• he spoke with the two men in the street while McKenna talked to Johnson;
• he heard Agent McKenna advise Johnson of his Miranda rights and recalled Johnson acknowledging that he understood his rights;
• a few people were inside the house at 1828 Anna Street, but the only people in the vicinity were Johnson and the two other people in the street;
• he was responsible for securing the perimeter, ie., keeping other people several feet away from the investigation;
• the defendant in court was identified as Johnson;
• at some point in their investigation, Johnson’s sister and either his mother or grandmother tried to approach the scene;
• Johnson’s sister tried to claim that the narcotics were hers; and
• he heard Johnson say that he was holding the drugs for someone else.
laRandall Robillard, a drug analysis expert, testified that he analyzed the substance obtained during the investigation of Johnson on May 21, 2008, and the 24 bags contained cocaine.
Agent John Witham testified that he assisted Agents McKenna and Sanders with their investigation on May 21, 2008. He corroborated the agents’ testimony.
Sergeant Carl Townley, accepted as an expert in narcotics sales, distribution, packaging and investigations, testified that:
• street-level drug dealers usually obtain their drugs from mid-level drug dealers to sell on their behalf, without requiring payment up front;
• the mid-level dealers are paid back after the drugs are sold;
• the street-level dealers often get to keep some of the drugs to sell themselves;
• often street-level dealers will keep the drugs nearby in a package on the ground, rather than on their person;
• there are many factors to consider when trying to determine if narcotics found on a person are for personal use or for distribution;[3]
• the bag obtained from near Johnson, with the 24 Baggies of packaged cocaine inside, was packaged for street sales; and
• if a person were to smoke 6.2 grams of cocaine, the amount obtained in this case, in one day, he would probably overdose and die.
Kathy Harris, the mother of Johnson’s children, testified that:
• on the date of his arrest, Johnson was reclining on top of his car in a driveway at 1823 Anna Street, Shreveport;
> she and several others were outside with Johnson;
14* when the police arrived, Harris was in the house checking on the food;
• she came outside and one of the police officers told her that they found drugs belonging to Johnson;
• she never heard Johnson admit that the drugs were his;
*1205 • the police found the bag with the drugs near a trash can; and
• Johnson never sold drugs.
Charles Harris, Kathy Harris’ father and the owner of the house at 1823 Anna Street, testified that:
• on May 21, 2001, he was outside cleaning his air conditioners;
• Johnson was also outside when another man[4] came over to talk with him;
• the police found something on the ground by a trash can;
• he did not believe that Johnson admitted ownership of the drugs;
• he was not watching Johnson the entire time he was outside;
• it was possible that at some point Johnson got into the vehicle;
• he had been convicted of disturbing the peace and simple battery; and
• he did not hear anything Johnson may have told the police.
Gladys Robinson, Charles Harris’ neighbor, testified that:
• she was playing cards with six other people at the house on May 21, 2008;
• Johnson quit playing and got on the hood of his vehicle to lie down;
• when the police arrived, they immediately handcuffed Johnson;
• upon arrest, Johnson was still on the hood of his car;
• the police had a photograph of Johnson with them;
la» she did not hear any of the conversation between the police and Johnson;
• a man named James dropped off the bag of drugs;
• she never told police about what she had seen because no one asked her about it;
• she did not want to volunteer the information because she was afraid that James or another drug dealer would try to harm her in retribution;
• the bag shown her in court was not the bag dropped off by James;
• she was afraid that if she did not cooperate with drug dealers, including testifying at their trials, they would burn her house down;
• she was not afraid of Johnson; and
• she never actually saw the police carrying Johnson’s photograph, but heard from a friend that they were showing his photo around the neighborhood.
On rebuttal, Sanders testified that:
• none of the police officers at the scene of the arrest had a picture of Johnson;
• it would be very difficult for anyone to have seen him and McKenna before they drove up to 1823 Anna Street because of their quick approach;
• he and McKenna immediately saw two males standing by a black pickup;
• he kept his eyes on them and never saw them throw anything;
• they ran a warrant check on both men and saw that both were very calm;
• the men were a good distance from Johnson;
• Gladys Robinson did not come out of the house until after the arrest; and
• he did not actually see Robinson exit the house at 1823 Anna Street, but she was walking from that general direction when Johnson was arrested.
|fiThe jury unanimously found Johnson guilty as charged.
Though originally billed as a third-felony habitual offender, he was allowed to plead as a second-felony offender, in exchange for an agreed-upon sentence.
The state’s factual basis revealed that Johnson had a previous conviction for ve *1206 hicular homicide and for possession with intent to distribute cocaine. The trial court then sentenced Johnson to 25 years at hard labor without benefit of probation or suspension of sentence, concurrent with any other sentence.
DISCUSSION
Defendant’s only assignment of error alleges insufficiency of the evidence. He points out that:
• the cocaine was not found in his vehicle, but three to five feet away from it;
• the area of his arrest is a high-crime area known for narcotic sales; and
• police did not find cash or scales on him or in his vehicle.
The state disagrees, citing the testimony of McKenna, Sanders, Witham, Townley, and Robillard.
La. R.S. 40:967(A)(1) provides in relevant part:
A. Manufacture; distribution. Except as [otherwise authorized], it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance ... classified in Schedule II.
17Our law on assessing sufficiency of evidence claims in drug cases is well settled.[5]
*1207 The testimony of Agents McKenna, Sanders, and Witham, which the jury clearly found to be credible, was sufficient to prove guilt. McKenna | «testified that Johnson was very nervous when he approached him and searched his vehicle. After he found a bag containing 26 Baggies of crack cocaine about one yard from Johnson’s vehicle, the defendant admitted that he was holding the drugs for someone. Both Sanders and Witham corroborated McKenna’s testimony that Johnson told him that he was holding the drugs for someone.
The jury accepted Sanders’ version of events, and rejected Robinson’s. This credibility determination is entitled to great deference. These facts, when viewed in a light most favorable to the state, provide sufficient evidence for conviction.
DECREE
Defendant’s conviction and sentence are AFFIRMED.

. Agent John Witham.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Examples: How the drugs are packaged, the amount of drugs, and whether the suspect has drug paraphernalia on his person. Usually a cocaine user will have a crack pipe on his person to smoke the cocaine as soon as he purchases it.

. "James.’:

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 states that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence.” However, La. R.S. 15:438 does not establish a stricter standard than Jackson v. Virginia; rather, it serves as a helpful evidentiary guide for jurors in evaluating circumstantial evidence. State v. Major, 2003-3522 (La.12/1/04), 888 So.2d 798; State v. Russell, 46,426 (La.App.2d Cir.8/17/11), 73 So.3d 991, writ denied, 2011-2020 (La.2/10/12), 82 So.3d 270.
Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. State v. Major, supra. Constructive possession depends on dominion and control over the drugs, even in the absence of physical possession. State v. Harris, 94-0970 (La. 12/8/94), 647 So.2d 337. Mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, but the courts consider various factors to determine whether a defendant exercised sufficient dominion and control to constitute constructive possession, including (1) his knowledge that drugs were in the area, (2) his relationship with the person, if any, found to be in actual possession, (3) his access to the area where the drugs were found, (4) evidence of recent drug consumption, and (5) his physical proximity to the drugs. State v. Toups, 2001-1875 (La. 10/15/02), 833 So.2d 910; State v. Russell, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,-981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir. 12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d *1207 Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La. 10/12/01), 799 So.2d 490. See also State v. Johnson, 96-0950 (La.App.4th Cir.8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60(1999).
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529.